2007 VT 109

**In re NORTHERN ACRES, LLC**

[941 A.2d 240]

No. 06-324

¶ 1. October 8, 2007. Applicant Northern Acres, LLC seeks to subdivide land designated as "common land" on a recorded subdivision plat. The environmental court granted summary judgment to the Town of Swanton, concluding that applicant did not establish its authority to develop the property. Applicant argues that the court erred by: (1) considering the effect that private covenants might have on its development rights; (2) binding it to implicit permit conditions; and (3) evaluating its request as one for modification of an existing permit rather than an application for a new development. Because we conclude that the trial court correctly recognized that the final recorded plat necessarily became the subdivision permit conditions, we affirm.

¶ 2. The facts are undisputed. In June 1997, Chad and Mary Metayer sought approval from the town planning commission for a four-unit planned residential development (PRD). In connection with their request, they submitted a sketch plan, which was apparently a 1997 survey map created by Brooks Land Surveying, Inc. titled "Planned Residential Development, Chad Metayer." This map depicts four lots as well as an 11.33-acre parcel that bears the following label:

COMMON LAND
TO BE CONVEYED TO
*MIDDLE ROAD
HOMEOWNER'S ASSOCIATION*
493,754 sq. ft. 11.33 acres
(includes 0.62 acres of the 50'
right of way)
(refer to Homeowner's Association
Regulations for details of
restrictions and uses)

At a June 1997 planning meeting, it was discussed that "the common land would be for [the] four lots only with no buildings or permanent structures." The planning commission approved the Metayers' final plat request at its June 1997 meeting, finding the sketch plan consistent with its checklist.

¶ 3. In October 1998, the Metayers deeded the entire PRD to RLP, Inc. On the same date, RLP, Inc. recorded the "Middle Road Homeowner's Association Declaration of Covenants, Restrictions and Conditions." By its terms, the Declaration applies to the PRD depicted on the Brooks survey map. Article One defines various terms, including the term "common land."* Article VI is titled "Common Land," and it provides that the "Middle Road Homeowner's Association" will own the area designated as "common land" and have "sole jurisdiction of the care and use of the common land." The Declaration states that "no permanent structures of any type" may be constructed on the common land, and that the land may be used for gardening, recreation, and other similar activities. Article VI of the Declaration provided that RLP, Inc. had authority to "interpret, administer, and enforce" the covenants until the formation

---

* In this article, "common land" is defined as "that section of land which is under the sole control of the Middle Road Landowner's Association and not intended to be conveyed to any individual lot."

of the Middle Road Homeowners' Association.

¶ 4. On December 31, 1998, the final subdivision plat (the Brooks survey cited above) was recorded in the town land records. The recorded map indicates that the final plat was approved by resolution of the planning commission on December 30, 1998. In 1999, RLP, Inc., conveyed the four lots in the PRD to separate purchasers via warranty deeds. Each deed references the Brooks survey map and states that it is subject to the Declaration cited above.

¶ 5. In November 1999, after all four lots had been conveyed, RLP, Inc. created a written document entitled "Transfer of Ownership from RLP, Inc. to Northern Acres, LLC, MIDDLE ROAD LANDOWNER'S ASSOCIATION." This document, which was not recorded, appears to identify the "purposes and responsibilities" of the "Middle Road Landowner's Association." It states that the Landowner's Association was the "owner and overseer of Middle Road Homeowner's Association including road (Green Acres Drive) and so-called 'Common Land,'" and indicates that it was empowered to "oversee, interpret, administer, and revise as it sees fit, Middle Road Homeowner's Association, per ARTICLE VII." The Landowners' Association was to "pay any and all taxes until such time that property is deeded to Middle Road Homeowner's Association," explore the possibility of expanding the PRD, and fund and oversee "Phase II" of the development project. When Phase II was complete, Northern Acres was to turn over all responsibilities held by the Landowners' Association to the Middle Road Homeowners' Association, at which time the Landowners' Association would be terminated.

¶ 6. In December 2003, Northern Acres (c/o Chad Metayer) filed an application with the town, seeking to amend the previously approved PRD and create four

lots in the area previously designated as "common land." The planning commission denied the request in March 2004. Applicant appealed to the environmental court, and pursuant to the parties' stipulation, the application was remanded to the planning commission. After a public hearing on the application, the planning commission again denied applicant's request. Applicant appealed to the environmental court, and the court granted summary judgment to the town.

¶ 7. The environmental court explained that, as a threshold matter, an applicant must show that it has authority to conduct the development that its application proposes. The court found that applicant had not only failed to meet its evidentiary burden but it had actually presented evidence that there was an express prohibition against the development suggested in its application. Allowing the proposed development to go forward, the court reasoned, would be like approving an applicant's proposal to develop property in which he or she had no present ownership interest or authority. The court found no support for such a proposition, and it declined to establish any such authority in this case. Even assuming that applicant had the power to revise the Declaration of Covenants to eliminate the restrictions on the common land, the court continued, there was no evidence that applicant had actually exercised such power. Given that the covenants of record currently prohibited any development, the court stated that it would be premature to request that the planning commission authorize further subdivision.

¶ 8. In reaching its conclusion, the court rejected applicant's assertion that the planning commission had approved the 1997 PRD "without conditions" and not subject to the Declaration of Covenants, and that therefore there were no conditions prohibiting further development of the common land. The court explained that the 1997 decision was an approval of a final plat submitted by application, and that "recorded plats necessarily become subdivision permit conditions." *In re Stowe Club Highlands*, 164 Vt. 272, 276, 668 A.2d 1271, 1275 (1995). In this case, the approved recorded final plat clearly designated the 11.33 acres as common land that would be conveyed to the homeowners' association. It referred to the homeowners' regulations for restrictions on use, and the recorded Declaration plainly stated that this land was to remain undeveloped. The court also noted that there was evidence that the planning commission had relied upon applicant's 1997 representations, both oral and as appearing on the approved final plat, that the parcel would be preserved as undeveloped common land. The court thus concluded that the restriction on further development was a condition of the 1997 permit, and that this condition could not be altered in the absence of changed conditions.

¶ 9. The court found an amendment to the permit unwarranted. It explained that there was no evidence of any changes in factual or regulatory circumstances, and it was entirely foreseeable in 1997 to both the planning commission and Mr. Metayer that a future landowner might wish to further subdivide the protected parcel. The undisputed record also showed that Mr. Metayer represented in 1997 that this parcel would be preserved as undeveloped common land. The planning commission noted this representation in its minutes and relied upon it in approving the 1997 subdivision plat. Absent evidence of changed circumstances that would allow an amendment to the PRD as approved in 1997, the court concluded that applicant could not now be allowed to further subdivide the 11.33-acre parcel of land even if the Declaration were to be lawfully amended to remove the common land provision. The court therefore granted summary judgment to the town. This appeal followed.

¶ 10. Applicant argues that the court improperly based its decision on an interpretation of private covenants and contracts. According to applicant, it has "clear and unbroken title" over this property, which should have sufficed to establish its threshold evidentiary burden. Applicant also asserts that it obtained "general ownership and control" over the common land from RLP, Inc., including the ability to modify any agreements and to develop the property. In a related vein, applicant argues that the 1997 PRD permit did not contain any explicit conditions, and that it should not be held to oral representations made to the planning commission. It also asserts that the final recorded plat did not create any binding conditions prohibiting future development of the common land. Finally, applicant argues that an evaluation of changed circumstances was unnecessary because it was not seeking to modify an existing permit condition.

¶ 11. The court's decision must be upheld. The undisputed facts plainly show that applicant lacks authority to develop this property, and summary judgment was therefore properly granted to the town. See V.R.C.P. 56(c) (summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law); *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000) (on review of summary judgment decision, Supreme Court applies same standard as that applied by trial court).

¶ 12. As the environmental court recognized, the final recorded plat necessarily became the subdivision permit conditions. *In re Stowe Club Highlands*, 164 Vt. at 276, 668 A.2d at 1275. In this case, the final plat, recorded in December 1998, designates the 11.33-acre parcel as "common land" to be conveyed to the homeowners' association. It explicitly references the homeowners' regulations for details on use restrictions. The Declaration, which had been recorded earlier, expressly provides that the common land would be owned by the homeowners' association and that any development of this land was prohibited. We wholly reject applicant's assertion that the homeowner "regulations" referred to on the recorded plat do not exist. This phrase plainly refers to the recorded "Middle Road Homeowner's Association Declaration of Covenants, Restrictions and Conditions," which explicitly govern the development of the lots and the common land. There are no other such regulations. Given that the recorded plat became the terms of applicant's PRD permit, applicant failed to establish its authority to develop the common land.

¶ 13. None of applicant's arguments undermine this conclusion. The court did not base its decision on an interpretation of private covenants, nor is it necessary to hold applicant to the oral representations made to the planning commission in 1997. Instead, as discussed above, applicant was properly required to abide by the terms of the recorded final plat. Similarly, we need not decide if applicant actually has the power to modify the Declaration to eliminate the restrictions on the common land (despite the fact that no modification authority is provided in the Declaration). The undisputed evidence in this case shows that applicant has not revised the covenants. As the environmental court found, the restrictions on record, referred to in the recorded plat, prohibit the development of the common land. Applicant hardly has "unquestioned control" to develop this property as proposed, and it failed to meet its threshold burden in this case.

¶ 14. Because the existing permit required that the common land remain undeveloped, the environmental court properly considered whether a modification of the permit was warranted. Indeed, applicant expressly sought an amendment to

the previously approved PRD below. The undisputed facts show that a permit modification was unwarranted in this case. Applying factors we found relevant in *In re Stowe Club Highlands*, 166 Vt. 33, 38-40, 687 A.2d 102, 105-07 (1996), the record here shows no changes in factual or regulatory circumstances beyond applicant's control; the issue of the future development of the common land was plainly foreseeable at the time the initial permit was issued; and there is evidence that the planning commission, and presumably the lot owners, relied upon the Metayers' representations that this land would remain undeveloped. No modification of the 1997 permit was warranted.

*Affirmed.*