STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 134-10-13 Vtec |
| All Metals Recycling Location Cert. | DECISION ON MOTION |

The present matter is an appeal from the Town of Williston Selectboard's decision to issue a certificate of approved location under Vermont's Salvage Yard Statute, 24 V.S.A. §§ 2241–2283, to Applicant All Metals Recycling, Inc. for a scrap metal recycling facility on Dorset Lane in the Town of Williston (Town). Appellants in this matter are Darlene Ashley; Jennifer Ashley; James Babcock; William Babcock; Gary Boutin; John Chandler; Shawn Chapman; Patty Shortsleeves; George Shortsleeves; Wayne Burnett; Jeannine Burnett; Michael Burnett; Mark Burnett; James Burnett; and Burnett Scrap Metals, LLC. Appellants are represented by Hobart F. Popick, Esq. Applicant is represented by Robert F. O'Neill, Esq. and David Boyd, Esq. This is the second appeal regarding Applicant's facility to come before this Court. See In re All Metals Recycling, Inc., No. 171-11-11 Vtec, slip op., (Vt. Super. Ct. Envtl. Div. Nov. 1, 2013) (Walsh, J.), aff'd 2014 VT 101 (All Metals I).

Pending before the Court is Applicant's motion for summary judgment on all ten questions in this appeal. Also pending is Appellants' opposition on Questions 1, 2, and 5 and cross-motion for partial summary judgment on Questions 3 and 4 and 6 through 10. In support of its motion, Applicant argues that all ten questions in this appeal are precluded under the doctrine of claim preclusion (res judicata) by this Court's decision in All Metals I, and, alternatively, that two issues—whether Applicant has demonstrated proof of ownership and whether the facility is located in an "industrial" area—are precluded under the doctrine of issue preclusion (collateral estoppel). Applicant also argues that it is entitled to summary judgment on the merits. Appellants argue that no questions are precluded, that they are entitled to summary judgment on the issues of proof of property ownership (Questions 3 and 4) and

1

compliance with the Salvage Yard Statute's setback requirements (Questions 6–9), and that genuine disputes of material fact remain as to Questions 1, 2, and 5.

## Factual Background

For the sole purpose of deciding the pending motions, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. Applicant operates a scrap metal facility at 38–42 Dorset Lane in Williston, Vermont. Applicant shares the building with two other businesses—ReSource: a Nonprofit Community Enterprise, Inc., and a plumbing supply company.

2. Applicant's facility spans two parcels. One is owned by Riggs Properties. The other was formerly owned by the Town and is presently owned by the Thomas Hirchak Company.[1] When the Town owned the second parcel, Applicant had a year-to-year lease with the Town, which renewed automatically each year unless either party gave ninety days' notice of cancellation. Applicant now has a lease with the Thomas Hirchak Company under the same terms.[2] Neither Riggs Properties nor the Thomas Hirchak Auction Company signed Applicant's application for a certificate of approved location.

3. Applicant began physical operations at its facility at least as early as 2008.

4. At its facility, Applicant processes and crushes scrap metals for shipment off site. These scrap metals include used appliances, which may contain Freon or other fluids. Virtually all of the metals Applicant receives come pre-drained from ReSource,

---

[1] The Town sold its land after Applicant had filed its motion for summary judgment and Appellants had responded. In Applicant's reply to Appellants' response, Applicant submitted a supplemental statement of undisputed facts stating that the Town sold its land to the Thomas Hirchak Company, and that Applicant had a valid lease with the new owner. Applicant also attached a copy of its lease with the Thomas Hirchak Company to its supplemental statement of facts. Appellants then filed a sur-reply and did not contest the transfer of ownership or the new lease. The Court therefore considers the transfer of ownership and the existence of a lease between All Metals and the Thomas Hirchak Company to be undisputed. See V.R.C.P. 56(e)(2).

[2] The Court considers the terms of Applicant's lease with the Thomas Hirchak Company to be undisputed. Although Applicant did not list the terms of its lease with Thomas Hirchak Company in a separate statement of facts as required under V.R.C.P. 56(c), it did attach the lease to its second statement. Furthermore, it listed the terms of its original lease with the Town in its initial statement of facts, which Appellants did not dispute and which were identical to these terms. The Court therefore considers the terms of the lease undisputed. See V.R.C.P. 56(e)(2).

a neighboring business.[3] Applicant drains any appliances that do not come to it pre-drained before it recycles them.[4]

5. The facility collects three to four tons of material per day in the winter and up to ten tons of material per day in the summer. All Metals does not permanently store these materials but rather processes them for shipment off-site.

6. Applicant's neighbors include the Williston Department of Public Works to the north; Control Technologies to the east; Chittenden County Glass, Garage Outfitters, Darrell's Machine Shop, and the Children's Unlimited Daycare Facility (among others) to the south; and Everything Automotive and Tires, Green Mountain Collision, and the Thomas Hirchak Auction Company to the west.[5]

7. The Town of Williston has eleven zoning districts, including two "Gateway" zoning districts and two "Industrial" zoning districts. Williston, Vt., Unified Development Bylaw, Table of Contents (Jan. 21, 2013) (Bylaws).[6]

8. Applicant's facility is in Williston's Gateway Zoning District North (GZDN). The Bylaws describe the GZDN as "offer[ing] a location for a continuing diverse mix of light industrial, commercial, and office uses." Bylaws § 33.1.2 (2015).

---

[3] This fact comes from an affidavit from Randall Townes, one of the owners of All Metals Recycling, Inc. Appellants do not contest these facts, but rather object that Mr. Townes's affidavit is not based on his personal knowledge and is therefore not legitimate support under V.R.C.P. 56(c)(4) (requiring affidavits submitted for summary judgment to be based on personal knowledge). Because paragraphs 1 and 2 of the affidavit show that the affidavit is in fact based on Mr. Townes's personal knowledge, and because Appellants cite no other support in the record for their objection, the Court overrules this objection and considers the facts undisputed. See V.R.C.P. 56(e)(2).

[4] See supra note 3.

[5] See supra note 3.

[6] The parties submitted a copy of the Williston Bylaws as amended on January 21, 2013. The parties agree that this is a true and accurate copy of the Bylaws as they appeared on that date. It is undisputed that Applicant completed its application for a certificate of approved location on August 8, 2013. Under Vermont's doctrine of vested rights, Applicant's application is judged against the laws applicable on the date it was filed. Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181–182 (1981). This means that Applicant must show that it complied with the Salvage Yard Statute, and, by extension, any local ordinances the statute references, as they existed on August 8, 2013. Thus, the 2013 version of the Bylaws apply.

Applicant argues that the 2009 version of the Bylaws (not the 2013 version) applies because the 2009 version is the version used in All Metals I, and Appellants are collaterally estopped from applying any other version. This Court rejects this argument in Part I, infra. Furthermore, Applicant concedes that "the 2012 and 2013 amendments did not alter the Bylaw in any way potentially material to this action."

3

9. Williston's other "Gateway" zone—the Gateway Zoning District South (GZDS)— also allows "light industrial" uses, and indicates that "[l]ight [i]ndustrial" means "[i]ndustrial uses that do not generate large volumes of truck traffic . . . ." Bylaws § 34.1.5.4.

10. Williston also has two "industrial" zones—the "Industrial Zoning District East" (IZDE) and the "Industrial Zoning District West" (IZDW). Bylaws, ch. 35 & 36. The IZDE is designed for computer equipment manufacturing, solid waste disposal, and utilities. Id. § 35.1.2. The IZDW is designed to "ensure that industrial uses can prosper without adverse impacts on or complaints from incompatible neighbors." Id. § 36.1.2.

11. The IZDW has significant overlap with the GZDN in terms of allowed uses. Both allow what might be traditionally be considered "industrial" uses, e.g., unlimited construction, manufacturing, and wholesale trade. Both also allow what might traditionally be considered "commercial" uses (e.g., retail trade and food service with certain similar limitations, fitness and sports centers, dry cleaning establishments, and daycare facilities). Id. tbls. 33.A & 36.A.

12. Applicant's facility is located within one hundred feet of a state or town highway.

13. Applicant's recycling facility was the subject of another appeal before this Court. See All Metals I, No. 171-11-11 Vtec, slip op. (Vt. Super. Ct. Envtl. Div. Nov. 1, 2015) (Walsh, J.), aff'd, 2014 VT 101. All Metals I was an appeal from the Town of Williston Development Review Board's (DRB) decision to grant Applicant a discretionary permit under the Williston Bylaws.

14. In its original discretionary permit application, Applicant included a certificate of approved location requirements plan. This plan was intended to address Applicant's prospective compliance with the Salvage Yard Statute. At the DRB hearing on the discretionary permit application, the parties discussed the certificate of approved location requirements plan.[7]

---

[7] Appellants dispute the legal significance Applicant attaches to this certificate of approved location plan and discussion of the plan at the DRB proceedings. Appellants' Response to Appellee's Statement of Undisputed

15. Every Appellant in All Metals I is also an Appellant in this appeal. There are two additional Appellants in this case: James Burnett and Burnett Scrap Metals, LLC.

16. In All Metals I, this Court issued the following rulings:

   a. In our first decision on summary judgment, we granted partial judgment to All Metals, holding that, under the Williston Bylaws, only the owners of property need to sign permit applications; since All Metals was merely a lessee and the owners of the property (the Town and Riggs Properties) signed the application, the application had all necessary signatures. All Metals I, No. 171-11-11 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Apr. 23, 2012) (Walsh, J.). In so holding, the Court noted that "[the Bylaw] does not require that All Metals have any property interest in the Town's land in order for the Town to apply for a discretionary permit." Id.

   b. In our second decision on summary judgment, we granted partial judgment to All Metals, holding that the issue of whether the Town was authorized to lease its land and seek a permit for a private-party lessee was beyond the scope of the Environmental Division's jurisdiction. All Metals I, No. 171-11-11 Vtec, slip op. at 9–10 (Vt. Super. Ct. Envtl. Div. Apr. 4, 2013) (Walsh, J.). The Court noted the well-established rule in Environmental Division proceedings that applicants need make only a "threshold" showing of ownership. Id. at 9. The Court stated that All Metals had met that burden. Id.

   c. In our second decision on summary judgment, we also held that All Metals's facility was an allowed use in the GZDN because it fell within the scope of "waste management and remediation services," and therefore granted All Metals judgment on that issue. Id. at 6.

---

Material Facts and Appellants' Statement of Additional Undisputed Facts at ¶ 2, filed Aug. 8, 2014. They do not, however, appear to dispute the fact that Applicant submitted a plan that was intended to address the certificate of approved location requirements, and that this plan was discussed at the DRB hearing. See id. The Court therefore considers the fact that Applicant submitted such a plan and that it was discussed at the DRB hearing to be undisputed.

5

d. In our decision on the merits, we held that All Metals's proposed parking area was, with the addition of one bicycle parking space, adequate under the Williston Bylaws and did not violate Bylaw provisions regarding setback and snow storage. All Metals I, No. 171-11-11 Vtec, slip op. at 7–11 (Vt. Super. Ct. Envtl. Div. Nov. 1, 2013) (Walsh, J.).

17. Appellants appealed All Metals I to the Vermont Supreme Court, challenging this Court's ruling that All Metals's facility was an allowed use within the GZDN and that All Metals's parking plan was adequate. With regard to whether the facility was an allowed use within the GZDN, the Vermont Supreme Court affirmed this Court's decision and concluded that All Metals's operations fell within the definition of a "materials recovery facility" (a sub-category of "waste management and remediation services") and was therefore an allowed use in the GZDN. 2014 VT 101, ¶¶ 11–13. In so holding, the Supreme Court rejected Appellants' argument that waste remediation fell outside the scope of the GZDN's "light industrial" classification because it was really an "industrial" use. Id. at ¶ 14. The Supreme Court noted that there was no "substantive distinction between the two that is grounded in the Bylaws." Id.

**Discussion**

The Court will grant summary judgment to a party when that party establishes (1) that no genuine dispute of material fact exists and (2) that the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(a). On summary judgment, the Court must make all reasonable inferences in the non-movant's favor and must accept as true all allegations made by non-movants as long as they are supported by materials in the record that would be admissible as evidence. Robertson v. Mylan Laboratories, Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. Where the moving party would bear the burden of proof at trial, the Court must consider not merely whether there is a dispute of material fact, but whether the undisputed facts are sufficient to satisfy the movant's substantive evidentiary burden. See Town of Huntington v. Harriman & Goodrich, 27-2-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 27, 2011) (Durkin, J.).

For the reasons discussed below, the Court concludes that the issues raised in this appeal are not precluded by the decision in All Metals I. We also conclude that Applicant is

entitled to judgment in its favor on Questions 3, 4, and 6 through 10 and that Applicant has produced sufficient uncontradicted evidence to merit judgment as a matter of law as to Questions 1 and 5. The Court finds that Applicant has not introduced sufficient facts to support judgment on Question 2, and therefore we deny summary judgment on that question.

## I.  Claim and Issue Preclusion

Applicant argues that Appellants' challenge to its certificate of approved location is barred by both claim and issue preclusion. Claim preclusion (formerly known as res judicata) and issue preclusion (formerly known as collateral estoppel) are judicially created doctrines that seek to advance the interests of finality and efficiency by preventing parties from re-litigating issues that either have or should have been litigated in a prior suit. See Am. Trucking Ass'ns v. Conway, 152 Vt. 363, 371 (1989) (citing 18 Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 4403 (2d ed. 1982)). Claim preclusion bars parties from bringing claims that are part of the same "cause of action" already litigated in an earlier suit. Id. at 370. Issue preclusion bars re-litigation of issues that were "actually litigated and decided in a prior case between the same parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action." Id. at 369 (citing Wright & Miller, supra § 4416).

Applicant's claim-preclusion argument fails because the doctrine of claim preclusion is inapposite in the context of separate and distinct permit appeals. The underlying rationale of claim preclusion is that a judgment, once rendered, marks the full measure of a party's relief for a single "claim" or "cause of action." See Wright & Miller, supra § 4402 (quoting Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 535–36 (5th Cir. 1978)). Because of this, a judgment must be final not only as to matters actually litigated, but matters which ought to have been litigated. Id.; see also Am. Trucking Ass'ns, 152 Vt. at 370. Thus, the critical issue in claim preclusion is defining the scope of a judgment's preclusive effect (or, alternately phrased, the scope of the "claim" litigated in the first action). Id.

Vermont generally follows the Second Restatement's multi-factor, transactional approach to defining the scope of a "claim." See Faulkner v. Caledonia Cnty. Fair Ass'n, 2004 VT 123, ¶¶ 12–14, 187 Vt. 51 (citing Restatement (Second) of Judgments § 24(2) (1982)). The Vermont Supreme Court has noted, however, that "'[p]reclusion is narrower when a procedural system in fact does not permit the plaintiff to claim all possible remedies in one action'" and that claim preclusion does not apply when "'[t]he plaintiff was unable . . . to seek a certain

7

remedy or form of relief in the first action because of the limitation on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands . . . in a single action.'" See State v. Carroll, 171 Vt. 395, 398 (2000) (quoting Restatement (Second) of Judgments § 24(1) (1982)).

This caveat is particularly relevant to proceedings before this Court. It is a fundamental tenet of land-use litigation that this Court's jurisdiction in a given matter only extends to the scope of the decision appealed from. In re Torres, 154 Vt. 233, 235 (1990). Even though this Court may, in a general sense, have subject matter jurisdiction over a wide array of permit appeals, the Court does not have jurisdiction in a given permit appeal to render binding decisions on a party's eligibility for separate and distinct permits that have not been properly decided below and appealed to the Court.

Applicant claims that the litigation over Applicant's discretionary permit in All Metals I precludes Appellants' challenge to its certificate of approved location in this case. But these are distinct permits from separate municipal bodies—the Town DRB considers discretionary permits, and the Town Selectboard considers certificates of approved location. See 24 V.S.A. §§ 2241(8), 2251. Because the DRB did not have the power to review Applicant's certificate application during the discretionary permit proceedings in All Metals I,[8] this Court also lacked that power. Claim preclusion only precludes suits for relief that should have been litigated in the first suit, see Am. Trucking Ass'ns, 152 Vt. at 370, and the present appeal could not have been litigated in the prior matter. The present appeal is therefore not barred under the doctrine of claim preclusion.

Applicant also argues that issue preclusion bars Appellants from challenging Applicant's ownership or control of the property (Questions 3 and 4) and from arguing that the area in which Applicant's salvage yard is located is not "zoned industrial" within the meaning of the

---

[8] Applicant emphasizes that it discussed its prospective eligibility for a certificate of approved location during the DRB proceedings. This may be so, but these discussions were irrelevant to the DRB proceedings, since the certificate issue was not properly before the DRB. The Court therefore need not have considered (and did not consider) these irrelevant discussions in its decision in All Metals I. See In re Poole, 136 Vt. 242, 245 ("A de novo hearing is one where the case is heard as though no action whatever has been held prior thereto.").

Applicant argues, citing 24 V.S.A. § 2251, that these certificate discussions were material because "Applicant was statutorily required to address its compliance with the Salvage Yard Statute before the DRB in All Metals I." (All Metals' Opp. to Cross-Mot. for Summ. J. & Reply in Support of Mot. for Summ. J. at 1, 5, filed Apr. 25, 2014). But Applicant states the law precisely backwards. Applicant was not statutorily required to address its compliance with the Salvage Yard Statute during its discretionary permit application—rather, it is statutorily required to address its compliance with zoning regulations during in its certificate of approved location application. 24 V.S.A. § 2251.

Salvage Yard Statute (relevant to Questions 6 through 9). Issue preclusion bars relitigation of an issue that was "actually litigated and decided in a prior case between the same parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action." Am. Trucking Ass'ns, 152 Vt. 363, 369 (1989) (citing Wright & Miller, supra § 4416.).

With regard to Applicant's property ownership, Appellants in All Metals I argued (1) that All Metals should have signed the permit application (only the Town and Riggs Properties, the owners of the underlying property, signed the application) and (2) that the Town did not have the power to seek a permit for the benefit of a private lessee of its land. See All Metals I, 171-11-11 Vtec, slip op. at 6–9 (Vt. Super. Ct. Envtl. Div. Feb. 29, 2012) (Walsh, J.). In its first decision on summary judgment, the Court granted judgment to Applicant on the first issue, holding that only the Town (as the property owner) needed to sign the application, and that the Bylaws "d[id] not require that All Metals have any property interest in the Town's land." Id. at 8. In the Court's second decision on summary judgment, it held that whether the Town had power to seek a permit for the benefit of a private party was beyond the Court's jurisdiction, since the Court only has the power to adjudicate threshold matters of property ownership. All Metals I, 171-11-11 Vtec, slip op. at 9, (Vt. Super. Ct. Envtl. Div. Apr. 4, 2013) (Walsh, J.). The Court also noted, in passing, that "we find that All Metals has made a sufficient showing of its control over the subject property," id. at 6–7, 9, but this final statement was dicta; the Court had explicitly held in its first decision on summary judgment that All Metals's property ownership was not at issue in the case. All Metals I, 171-11-11 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Apr. 4, 2013) (Walsh, J.). Because the issue of All Metals's property ownership was not before the Court in All Metals I, the issue was never "actually litigated and decided," and All Metals I is not preclusive here.

With regard to the "zoned industrial" issue, Applicant argues that this Court's decision in All Metals I—that Applicant's facility is an "allowed use" in the GZDN—bars Appellants from arguing that the GZDN is not "zoned industrial" under the Salvage Yard Statute. The Salvage Yard Statute imposes certain setbacks for salvage yards, but exempts yards in areas "zoned industrial under authority of State law." 24 V.S.A. § 2253(c); see also infra Part II.a. In All Metals I, the Court considered whether All Metals's facility was allowed in the GZDN. Appellants here ask whether the entire GZDN zone is "industrial." These issues are distinct, and All Metals I is therefore not preclusive on this issue.

9

Finding none of the issues in this case precluded by <u>All Metals I</u>, the Court turns to the substance of the parties' cross-motions and the ten questions presented.

**II.    Merits**

In their Statement of Questions, Appellants raise three major issues: (1) whether Applicant meets the statutory "location requirements" for salvage yards under 24 V.S.A. § 2253(a) (Questions 1–5); (2) whether the statute requires Applicant's facility to be set back 100 feet from State or town roads (Questions 6–9); and (3) whether the certificate should be denied because the discretionary permit at issue in <u>All Metals I</u> was still on appeal before the Supreme Court when Applicant applied for its certificate (Question 10).

At the outset, the Court dismisses Question 10 as moot. Question 10 is premised on the requirement in 24 V.S.A. § 2251 that an applicant for a certificate of approved location demonstrate compliance with all applicable municipal permitting requirements. Appellants suggest that the fact that Applicant's discretionary permit was still on appeal when it applied for its certificate should make it ineligible under 24 V.S.A. § 2251. But the Vermont Supreme Court has since issued its decision in <u>All Metals I</u>, affirming the discretionary permit. Applicant therefore meets this statutory prerequisite.[9] The question is therefore moot, and we grant summary judgment to Applicant on Question 10. As to the remaining issues, the parties agree there are no material facts in dispute with regard to the 100-foot setback issue (Questions 6–9), and the Court will therefore address this issue first. It will then address whether Applicant meets the statutory location requirements under 24 V.S.A. § 2253(a) (Questions 1–5).

a.    100-Foot Setback (Questions 6–9)

Vermont's Salvage Yard Statute forbids establishment of new salvage yards within 100 feet of a State or town road after July 1, 2009. 24 V.S.A. § 2253(b)(2). There is an exception to this prohibition: "Notwithstanding subsection (b) of this section, salvage yards . . . may be operated within . . . 100 feet of the nearest edge of the right-of-way of a State or town road,

---

[9] Even if it were improper for the Selectboard to grant Applicant a certificate while its compliance with the Town zoning ordinance was in doubt, procedural improprieties before municipal bodies below to not affect the conclusions in this Court, since the standard of review in this appeal is de novo. 24 V.S.A. § 2283 (providing for appeals of certificates of approved location under the de novo standard in 10 V.S.A. § 8504); <u>In re Poole</u>, 136 Vt. 242, 245 ("A de novo hearing is one where the case is heard as though no action whatever has been held prior thereto.").

provided that the area in which the salvage yard is located is zoned industrial under authority of State law." 24 V.S.A. § 2253(c). Finally, Subsection 2255(b)(5) requires salvage yard certificates to contain:

> [A] condition requiring a salvage yard established or initiated prior to July 1, 2009 to be setback 100-feet from the nearest edge of a right-of-way of a State or town road . . . , provided that if a salvage yard cannot demonstrate during the application process that it meets the 100-feet setback requirement of this subdivision, a municipality may regulate the salvage yard as a nonconforming use, nonconforming structure, or nonconforming lot under a municipal nonconformity bylaw adopted under section 4412 of this title, provided that no enlargement or further encroachment within a setback required under this subdivision shall be allowed.

Applicant argues that its salvage yard is in an industrial area, and that it therefore does not need to comply with the setback. Appellants disagree. First, they argue that the zoned-industrial exception does not apply to new (i.e., post July 1, 2009) salvage yards, and that Applicant's yard should be considered a new yard as a matter of law because Applicant did not seek certification before July 1, 2009. Second, Appellants argue that, even if new yards were eligible for the zoned-industrial exception, the Gateway Zoning District North (GZDN) is not industrial. Finally, Appellants argue that any certificate the Court might issue must contain a condition that Applicant comply with the 100-foot setback pursuant to 24 V.S.A. § 2255(b)(5).

1. Whether 24 V.S.A. § 2253(c) applies to both old and new salvage yards.

The plain language of the zoned-industrial exception in Subsection 2253(c) makes no distinction, on its face, between new and old salvage yards. Nevertheless, Appellants emphasize that Subsection 2253(b)(2) forbids "establish[ing]" new salvage yards within a 100-foot setback, while Subsection 2253(c) allows yards to "operate[]" within the setback in industrial areas. They argue that this word choice shows that only old yards may "continue to operate" in industrial areas—in other words, they argue that Subsection 2253(c) is not a true exception, but merely a grandfathering provision for old yards in industrial areas. Appellants argue that this interpretation is the only way to reconcile the zoned-industrial exception and 2255(b)(5), which they read to require all old salvage yards (even in industrial areas) to either comply with the setback or be regulated as a nonconforming use.

In interpreting statutes, our primary goal is to give effect to the legislative intent. In re S. Burlington-Shelburne Highway Project, 174 Vt. 604, 605 (2002). Where the legislative intent is clear from the plain language of the statute, courts must enforce the statute as written. Id.

11

Because we presume the legislature used its language advisedly, we avoid constructions that render provisions or words superfluous. State v. Kreth, 150 Vt. 406, 409 (1988). Where it is possible, without offending plain language, to read related provisions in harmony with each other, we attempt to do so. See In re S. Burlington-Shelburne Highway Project, 174 Vt. at 605.

Turning first to Appellants' textual argument, the Court rejects Appellants' claim that only old yards are eligible for the zoned-industrial exception in Subsection 2253(c) for the simple reason that the plain language of that Subsection makes no distinction between new and old yards—it simply says "salvage yards." Furthermore, Appellants' reading essentially asks the Court to ignore the introductory clause. The phrase "Notwithstanding subsection (b) of this section" shows that there must be some inherent contradiction between the prohibition on new salvage yards in the setback in Subsection 2253(b) and the exception for yards in industrial areas in Subsection 2253(c). If the zoned-industrial exception, by its terms, applied only to old yards, there would be no contradiction, and no reason to include the words "Notwithstanding subsection (b)."

To bolster their textual argument, Appellants argue that Applicant's interpretation, when read in conjunction with the grandfathering provisions in Subsection 2255(b)(5), would have the incongruous effect of favoring new salvage yards over old ones in industrial areas. This argument misinterprets the text of the grandfathering provision in 24 V.S.A. § 2255(b)(5).

Subsection 2255(b)(5) requires all salvage yard certificates to contain:

[A] condition requiring a salvage yard established or initiated prior to July 1, 2009 to be setback 100-feet from . . . a State or town road . . . provided that if a salvage yard cannot demonstrate during the application process that it meets the 100-feet setback requirement of this subdivision, a municipality may regulate the salvage yard as a nonconforming lot, nonconforming use, nonconforming structure, or nonconforming lot . . . provided that no enlargement or further encroachment within a setback required under this subdivision shall be allowed.

On its face, this Subsection makes no distinction between industrial and non-industrial areas. Therefore, Appellants argue, Subsection 2255(b)(5) would subject old salvage yards in both non-industrial *and industrial* areas to regulation under municipal nonconformity bylaws, meaning that old yards in industrial areas could not continue to grow or further encroach the 100-foot setback. Meanwhile, Appellant's argue, because the grandfathering provisions in Subsection 2255(b)(5) do not apply to new yards, new yards in industrial areas could grow freely if they were allowed within the setback under the zoned-industrial exception.

In fact, Subsection 2255(b)(5) would not require old salvage yards in industrial areas to be regulated as nonconformities because Subsection 2255(b)(5) only governs *nonconforming* old salvage yards. An old salvage yard in an industrial area is not nonconforming, since it is an allowed use under the zoned-industrial exception in Subsection 2253(c). In other words, an old yard in an industrial area "*can*[] demonstrate during the application process that it meets the 100-feet setback requirement," 24 V.S.A. § 2255(b)(5), because that requirement does not impose any obligations on such salvage yards. Thus, both old and new salvage yards in industrial areas are allowed to grow and further encroach the 100-foot setback, and no incongruous results flow from the Court's reading of the zoned industrial exception.[10]

Thus, the Court interprets the zoned-industrial exception to extend to both old and new salvage yards. In industrial areas, all salvage yards (new and old) may continue to grow and need not be regulated as nonconformities. See 24 V.S.A. § 2253(c), 2255(b)(5). In non-industrial areas, no new salvage yards may be built within the setback, and old yards must either comply with the setback or be regulated as a non-conforming use (meaning they cannot expand or further encroach on the setback). See 24 V.S.A. § 2255(b)(5). This interpretation is the most faithful to the plain meaning of the Salvage Yard Statute, and fully comports with the evident legislative intent behind the statute: to restrict salvage yards in scenic, non-industrial areas, but allow salvage yards in non-scenic, industrial areas. Because the Court concludes that both old and new yards are eligible for the zoned-industrial exception, the Court need not consider Appellants' argument that Applicant should, as a matter of law, be treated as a new salvage yard or Applicant's argument that it may be certified and regulated as a nonconforming lot.

2.   Whether the GZDN is "zoned industrial."

The Court must next determine whether the GZDN, the zone in which Applicant's yard lies, is in an "industrial" area, as that term is used in the statute (Appellants' Question 7).  The Salvage Yard Statute does not define the phrase "zoned industrial." See 24 V.S.A. § 2253(c). The

---

[10] It is Appellants' reading that may lead to incongruous results. Appellants read Subsection 2253(c) to essentially grant grandfather status to old salvage yards in industrial areas. This necessarily implies that salvage yards in non-industrial areas do *not* have grandfather status (else the zoned-industrial provision in Subsection 2253(c) would serve no purpose). Not only is this reading implausible in light of the grandfathering provisions in Subsection 2255(b)(5), since that Subsection makes no distinction between industrial and non-industrial areas, but such a reading could expose the state to substantial takings liability or else be unconstitutional, for it would require closure of all pre-existing salvage yards in non-industrial areas. See 4 Arden H. Rathkopf, The Law of Zoning and Planning § 72:3 (4th ed.) (explaining that a statute or zoning ordinance that applied retroactively to render pre-existing, vested uses illegal would likely be unconstitutional or, at least, a taking).

evident purpose of the 100-foot setback requirement and the zoned-industrial exception are to preserve scenic views from state and town roads in areas with views worth preserving. The underlying concern in determining whether a particular municipal zone is "zoned industrial" should therefore be whether the uses allowed in a zone diminish the zone's scenic character.

The purposes section of the GZDN states that the GZDN is designed to accommodate "a continuing diverse mix of light industrial, commercial, and office uses." Bylaws § 33.1.2. The zone allows many uses that would traditionally be considered "commercial" (e.g., dry cleaning services, limited retail establishments, and daycare facilities), but it also allows many uses that might be considered "industrial" or even "heavy industrial" (e.g., manufacturing, construction, waste remediation,[11] and wholesale trade). Because the Bylaws allow such extensive industrial uses in the GZDN, most of which would diminish the scenic character of the zone, the Court concludes that the GZDN is "industrial" for the purposes of the Salvage Yard Statute.

Appellants argue that the GZDN only allows "light industrial," as opposed to true industrial uses. See Bylaws § 33.1.2. They point to the fact that the GZDN allows "health care and social services," including daycare facilities, and they stress that the Bylaws contain two other zones that are formally denominated "Industrial"—the Industrial Zoning District East (IZDE) and the Industrial Zoning District West (IZDW).

Appellants do not, however, offer any substantive distinction between "light industrial" and "industrial" uses, nor can this Court discern one from a close examination of the Bylaws.[12] The two "Gateway" zoning districts—the Gateway Zoning District North (GZDN) and Gateway Zoning District South (GZDS)—allow "light industrial" uses, see id. §§ 33.1.2, 34.1.5.4, and the purposes section of the GZDS indicates that "Light Industrial and Warehousing Uses" means "[i]ndustrial uses that do not generate large volumes of truck traffic." Id. § 34.1.5.4.  The two

---

[11]  Appellants argue that the fact that waste remediation services (i.e., salvage yards) are an allowed use in the GZDN cannot be evidence that the zone is "industrial" for the purposes of the Salvage Yard Statute. They reason that, if allowing salvage yards in a zone automatically means that zone is "industrial," every zone would be an "industrial zone," since all salvage yards must show compliance with local zoning ordinances as part of their certificate applications. See 24 V.S.A. § 2251. Thus, they argue, the exception would swallow the rule. First, this argument ignores the possibility of variances, special exceptions, and conditional uses: a salvage yard may be located in a zone that does *not* allow salvage yards as of right and still show compliance with local zoning ordinances because it has obtained a variance, special exception, or conditional use. More importantly, however, the Court does not hold that the fact that a salvage yard is allowed in a zone *per se* makes the zone "industrial" under the statute. Rather, the Court regards the fact that salvage yards are an allowed use in a zone as one piece of evidence of the zone's "industrial" character.

[12] Appellants' arguments in All Metals I suffered from the same defect. As the Supreme Court noted in that case, there is no "substantive distinction between the two that is grounded in the Bylaws. The Bylaws do not define the term 'industrial' or offer any difference between 'industrial' and 'light industrial' uses." In Re All Metals Recycling, Inc., 2014 VT 101, ¶ 14.

"industrial" districts, however, allow many of the same uses that the GZDN allows—indeed, it is actually the IZDW, not the other "Gateway" district, that overlaps the most with the GZDN in terms of allowed uses. Both allow seemingly "heavy" industrial uses (e.g., unlimited manufacturing, construction, waste management and remediation, and wholesale trade) and "commercial" uses (e.g., fitness and sport centers, limited food service and catering facilities, and dry cleaning services). Id. tbls. 33.A, 36.A. Both zones allow daycare facilities. Id. Given the extent of this overlap, the Bylaws do not appear to contemplate any functional distinction between "light" industrial and "industrial" zones, aside from the quantity of truck traffic they generate. See id. § 34.1.5.4.

Appellants stress that the Salvage Yard Statute is remedial, and that exceptions to its requirements are to be construed narrowly. See Dept. of Corrections v. Human Rights Comm'n, 2006 VT 124, ¶ 7, 181 Vt. 225. But Appellants do not offer any argument for where the line between "light industrial" and "industrial" might lie under a narrow reading of the exception. Furthermore, there is an equally well-established canon of construction that cuts the other way: statutes and ordinances in derogation of common-law property rights must be strictly construed, and "[w]hen exemptions appear in favor of the property owner, the exemption should be construed in favor of the owner." In re Willey, 120 Vt. 359, 365 (1958). The Court therefore does not interpret the exception to exclude zones simply because they are labeled "light" industrial.

Given the heavy industry allowed in the GZDN and the functional similarities between the GZDN and the "industrial" IZDW, the Court concludes that the "light industrial" GZDN is "industrial" for the purposes of the Salvage Yard Statute, 24 V.S.A. § 2253(c). The Court therefore grants summary judgment to Applicant on Questions 6 and 7.

3. Whether the salvage yard must, under 24 V.S.A. § 2255(b)(5), either comply with the setback or be regulated as a nonconforming use.

Because the Court concludes that the GZDN is zoned industrial, the 100-foot setback does not apply to Applicant's yard, and Subsection 2255(b)(5) does not require conditional certification. The Court declines to impose a setback in Applicant's certificate or regulate Applicant as a nonconforming use, and grants summary judgment on Questions 8 and 9 to Applicant.

b.  General Locational Requirements

Appellants' Questions 1 through 5 relate to the general location requirements[13] in Subsection 2253(a) of the Salvage Yard Statute. 24 V.S.A. § 2253(a). Questions 3 and 4 regard the "proof of legal ownership" requirement in Subsection 2253(a)(1). Question 1 addresses whether Applicant's facility is consistent with the nature and development of surrounding property, as required in 24 V.S.A. § 2253(a)(2). Finally, Questions 2 and 5 address whether the facility will affect the public health, safety, and environment. 24 V.S.A. § 2253(a)(3).

1.  Proof of Legal Ownership (Questions 3 & 4)

The Salvage Yard Statute requires an applicant to demonstrate "proof of legal ownership or the right to such use of the property." 24 V.S.A. § 2253(a)(1). The Court notes, at the outset, that it lacks the power to adjudicate property disputes. Waistfield Act 250 Water Supply Permit, No. 33-2-10 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Nov. 2, 2010) (Durkin, J.). Where land use statutes and ordinances require proof of ownership as a prerequisite to a permit, this Court only demands a threshold showing of ownership or right to develop the property. See id.[14]

Applicant has produced a copy of its lease with the Thomas Hirchak Company (the present owner of the parcel formerly owned by the Town). Under its terms, Applicant has a year-to-year lease, which automatically renews each year unless either party gives 90 days' notice of its intent to cancel. Appellants do not contest the validity of this lease.[15] Rather, Appellants argue that a year-to-year lease is an insufficient ownership interest under the Salvage Yard Statute (Question 3) and that Applicant has failed to demonstrate sufficient right

---

[13] The Court notes that the introductory text of Section 2253 only instructs the legislative body to "*consider* the following in determining whether to grant or deny the certificate." 24 V.S.A. § 2253(a) (emphasis added). But the title of the Section—"Location requirements"—suggests that each of the three prongs is a prerequisite (and not merely a factor for consideration) for obtaining a certificate. See State v. Hurley, 2015 VT 46, ¶ 11 (noting that courts may consider titles and headings in construing statutes).

[14] Appellants argue that applicants must establish "unquestioned control" over property in land use proceedings before the Environmental Division, citing In re Northern Acres, LLC, 2007 VT 109, ¶ 13, 182 Vt. 618 ("Applicant hardly has established 'unquestioned control' to develop this property as proposed, and it failed to meet its threshold burden in this case."). It is unclear to the Court, however, where the phrase "unquestioned control" comes from: the Northern Acres Court does not cite any authority for this phrase, and, in the same sentence, refers to applicant's burden as a "threshold" one. Id. This Court therefore does not read Northern Acres to upend the settled principle that proof of property ownership before the Environmental Court is a threshold matter. See In re Leiter Subdivision Permit, No. 85-4-07, slip op. at 4–5 (Vt. Envtl. Ct. Jan. 2, 2008) (Durkin, J.).

[15] See supra note 1.

to use the property where the underlying property owners did not sign the certificate application (Question 4).

The Salvage Yard Statute requires applicants to demonstrate "proof of legal ownership or the right to such use of the property." 24 V.S.A. § 2253(a)(1). The plain text of Subsection 2253(a)(1) does not require indefinite control over property. Indeed, the fact that the statute provides for either ownership *or the right to use the property* shows that the statute specifically contemplates forms of control other than fee simple title, e.g., leases. Since most leases in the commercial context are term leases, the Court finds it implausible that the Legislature intended to demand more than a term lease as a prerequisite to certification. The Court therefore finds Applicant's lease sufficient and grants judgment to Applicant on Question 3.

As to Appellants' second argument—that the owners of the underlying property should also have signed the application—the Court finds no support for this argument in the statute. The statute simply requires applicants to demonstrate a right to use the subject property. A lease demonstrates this. The Court will not read requirements into the statute that are not there, and therefore grants Applicant judgment on Question 4.

## 2. Nature and Development of Surrounding Property (Question 1)

Appellants' Question 1 asks whether Applicant's facility is consistent with the nature and development of the surrounding property under 24 V.S.A. § 2253(a)(2). Appellants oppose Applicant's motion for summary judgment on the grounds that Applicant bears the burden on this issue, and it has submitted insufficient evidence to warrant judgment in its favor at this stage. While the Court agrees that Applicant bears the burden in this case, the Court finds that Applicant has introduced sufficient undisputed facts to show that it is entitled to judgment as a matter of law. See In re Noyes CU, No. 98-7-11 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Dec. 12, 2011) (Durkin, J.). Applicant has submitted an affidavit from Randall Townes, one of the owners of All Metals Recycling, Inc., attesting to the names and endeavors of neighboring businesses. Mr. Townes attests that Applicant shares a building with a plumbing supply company and ReSource Nonprofit Community Enterprise, Inc., a company that repairs appliances. Mr. Townes attests that Applicant's other neighbors include the Williston Department of Public Works to the north; Control Technologies to the east; Chittenden County Glass, Garage Outfitters, Darrell's Machine Shop, and the Children's Unlimited Daycare Facility (among others)

to the south; and Everything Automotive and Tires, Green Mountain Collision, and the Thomas Hirchak Auction Company to the west.

Applicant has also introduced Yellowpages advertisements clarifying the business endeavors of the named companies, including printouts that show that Chittenden County Glass is a plate and auto glass manufacturer and distributor; that Garage Outfitters is a resin wholesaler and distributor; and that Control Technologies installs and distributes Honeywell control systems for lighting and heating. Though Applicant neglected to list facts from these printouts in its statement of facts as required under V.R.C.P. 56(c), the Court may review materials in the record that are not properly cited, V.R.C.P. 56(c)(3), and the Yellowpages printouts form part of the record because they are admissible at trial under the Environmental Court's relaxed evidentiary rules. See V.R.E.C.P. 2(d) (allowing the Environmental Division, in its discretion, to admit evidence that would not be admissible under the Vermont Rules of Evidence if the evidence "is of a type commonly relied on be reasonably prudent persons in the conduct of their affairs"). We consider these printouts to be the kind of information reasonably prudent people would rely on, and, in any event, give these materials weight proportional to their reliability.

Based on Mr. Townes's affidavit and supporting exhibits, the Court concludes, even making all reasonable inferences in favor of Appellants, that Applicant is surrounded by precisely the kinds of businesses one would expect near a salvage yard: auto repair facilities; public works departments; machine shops; and wholesalers and distributors of industrial supplies, including glass, control systems, and resins. The only business in the area that may seem anomalous is the nearby daycare facility. But a single daycare facility does not change the essential character of the area. All Metals's salvage yard is well-suited to the surrounding property uses.

Appellants object to Mr. Townes' affidavit on the basis that it is "not supported by personal knowledge," see Vermont Rule of Civil Procedure 56(c)(4), and that names of businesses alone are not relevant to the issue. Mr. Townes begins his affidavit by noting that he is one of the owners of All Metals Recycling, Inc., that he spends roughly half his working time at the facility, and that he visited the location of each of the neighbors he listed in his affidavit and personally confirmed their identity. Appellants, meanwhile, cite no authority in the record showing that Mr. Townes' does not have personal knowledge of these businesses. The Court therefore considers Mr. Townes's affidavit valid support for Applicant's motion.

The Court also rejects Appellants' argument that the names of businesses are immaterial. Even making all reasonable inferences in Appellants' favor, it is simply not reasonable to infer that "Williston Department of Public Works" is not a department of public works, that "Darrell's Machine Shop" is not a machine shop, that "Everything Automotive and Tires" is not an auto and tire shop, or that Green Mountain Collision is not a body shop. Applicant's supporting Yellowpages advertisements—which Appellants did not object to—clarify the business endeavors of the remaining surrounding businesses.

Based on the undisputed facts in Mr. Townes's affidavit, the Court concludes that Applicant's salvage yard is consistent with the nature and development of the surrounding property under 24 V.S.A. § 2253(a)(2) and grants summary judgment to Applicant on Question 1.

3.  Public Health, Safety, and Environment (Questions 2 & 5)

Finally, the Court turns to Appellants' Questions 2 and 5, which address the requirement that salvage yards not endanger the public health, safety, and environment in their proposed location. See 24 V.S.A. § 2253(a)(3). Specifically, Appellants ask whether Applicant meets this criterion given that its facility is located near a daycare facility (Question 2) and that its facility contains a storm drain and that Applicant processes used appliances, which may contain Freon, at its facility (Question 5). Because this Court's jurisdiction is limited to issues as they are presented in Appellants' Statement of Questions, see V.R.E.C.P. 5(f), the issues in these two questions are not whether Applicant generally meets this criterion, but whether it meets this criterion *given* these two circumstances.

With regard to the storm drain, Randall Townes attests in his affidavit that Applicant "receives virtually all of the scrap metal appliance it recycles in Williston from ReSource, which drains all fluids from those appliances before providing them to Applicant. Any appliances that Applicant receives in Williston that are not provided pre-drained by ReSource are drained by Applicant before they are recycled." Townes Aff. at ¶ 4, filed Apr. 25, 2014. Appellants mark this fact "disputed," but provide no citations to the record that show a genuine dispute, see Appellants' Statement of Facts ¶ 21, and the Court may therefore treat this fact as undisputed. V.R.C.P. 56(e)(2). Mr. Townes' affidavit, which attests that All Metals drains any undrained used appliances before it recycles them, is sufficient to show that Applicant's facility will not leak fluids into the nearby storm drain. The Court therefore concludes that the presence of a storm

drain on its property does not render the facility a danger to the public health, safety, or environment, and grants summary judgment to Applicant on Question 5.

With regard to the daycare facility (Question 2), Applicant has not submitted sufficient facts supported by evidence regarding the facility's potential effects on the daycare. As a matter of common sense, the Court agrees with Applicant that it is unlikely that the children in the daycare facility are allowed to roam freely throughout the neighborhood, and therefore, that a salvage yard would pose any threat to their safety. See (Applicant's Mot. for Summ. J. at 11, filed Apr. 25, 2014). As Appellants correctly note, however, Applicant bears the burden in this case. See In re Noyes CU, No. 98-7-11 Vtec, slip op. at 2. Applicant therefore has the burden to show that it is entitled to judgment as a matter of law through submission of materials that would be admissible as evidence. V.R.C.P. 56(e)(1), (2). Because Applicant has not provided facts supported by evidence sufficient to show that it will not pose a threat to the health, safety, or environment of the children in the nearby daycare facility, the Court denies summary judgment on Question 2.

## Conclusion

For the reasons discussed above, the Court **DISMISSES** Question 10 as moot. The Court **GRANTS** summary judgment to Applicant on Questions 1 and Questions 3 through 9. The Court **DENIES** summary judgment to Applicant on Question 2. The Court will schedule a status conference to discuss resolution of Question 2.

Electronically signed on December 04, 2015 at 11:25 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division