NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 12

No. 2014-369

| | |
|---|---|
| In re Willowell Foundation Conditional Use Certificate of Occupancy (Andrew Higbee, Jr. and Sheryl Knauth, Appellants) | Supreme Court<br><br>On Appeal from Superior Court, Environmental Division<br><br>April Term, 2015 |

Thomas G. Walsh, J.

James W. Runcie of Ouimette & Runcie, Vergennes, for Appellants.

F. Rendol Barlow, Mark L. Sperry and Wanda Otero-Weaver of Langrock Sperry & Wool, LLP, Middlebury, for Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund and Eaton, JJ., and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1.    **SKOGLUND, J.**    Willowell Foundation received a conditional-use permit to build a community center and related improvements on a large plot of land in the Town of Monkton. Neighbors challenge the permit. They argue the project violates a subdivision condition mandating agricultural use, claim additional failings of Willowell's application, and contend the Superior Court, Environmental Division, erred in several ways in upholding the permit approval. We affirm.

¶ 2.    Willowell's 229.8-acre plot is located in Monkton's Medium Density Rural Agricultural Zoning District (RA 2 MD) and is subject to the Unified Planning Document for the

Town of Monkton (2012), perma.cc/3X7Z-ZRYY [hereinafter UPD], which combines the Town's zoning regulations and subdivision regulations. Willowell's plot is Lot 6 of the Perry Flint & Hartshell Co. Subdivision, also known as the Hoag Farm Subdivision, which the previous owners created prior to conveying the property to Willowell in 2005. The subdivision also includes Lots 2 through 5. The Monkton Planning Commission approved and signed the subdivision plat, which states: "Approved by resolution of the Town of Monkton Planning Commission, Vermont, on the 28th day of May 2000, subject to all requirements and conditions of said resolution." All copies of the written resolution have disappeared, however, and thus the resolution was not introduced into evidence. The minutes of the meeting at which the resolution was passed are also lost. The plat, which was in evidence, outlines a "Building Envelope" on each lot, with the following explanation: "Each lot contains one building envelope with a proposed house site. All building envelopes have a set-back distance of 50 feet from lot lines unless otherwise labeled." The plat also depicts areas labeled "Agricultural Reserve," one of which covers a portion of Willowell's property. On Willowell's lot, the "Agricultural Reserve" area seems not to overlap with the "Building Envelope," although the envelope's lines do not appear to connect in at least one place, so the envelope is not a closed shape.

¶ 3. The proposed project includes Willowell's offices, a preschool with two classrooms, an art gallery, a multipurpose room, a library that incorporates an existing silo, a teaching kitchen, a farm stand, a garden, a farm-manager house, a relocated and rebuilt partially existing barn, a goat shed, two hoop houses, a widened existing access road, and a parking area. Many of these structures would be located outside of the "Building Envelope." Some would be sited within the "Agricultural Reserve," including the farm-manager house, garden, septic system, and other infrastructure.

¶ 4. Since Willowell acquired the land in 2005, it has used the project site three days per week to run the Walden Project, an alternative outdoor education program for high school

2

students.  Willowell also conducts small agricultural and educational programs on the project site.  The foundation plans to conduct similar programs in the proposed community center and related improvements.  Its mission is to foster connections between the arts, education, and the environment through educational community activities that focus on agriculture.

¶ 5.    For the RA 2 MD, where the project is located, the UPD lists permitted and conditional uses.  Permitted uses include "agricultural and forest uses," "one family dwelling," and "public outdoor recreation"; conditional uses include "Art Gallery," "Commercial Day Care Center for Children," and "Community Center."  For a proposed development that is "neither specifically prohibited nor permitted nor listed" as a conditional use, the UPD provides that the Monkton Development Review Board (DRB) may hear the application as one for conditional use "when in the opinion of the DRB the proposed use does not detract from the traditional rural agricultural character of the town, and is compatible with other uses" in the relevant zoning district.  Because some of Willowell's proposed activities and structures are permitted uses in the RA 2 MD, but others are either conditional uses or not listed, Willowell applied to the DRB for a conditional-use permit, which necessarily entailed a site plan review.  Among other review criteria, the UPD requires that any proposed conditional use will not result in any undue adverse effect on "[b]ylaws and ordinances in effect."

¶ 6.    The DRB approved Willowell's application, subject to certain conditions.  One interested party, who was later dismissed from the case, appealed the decision to the Environmental Division, and Willowell cross-appealed.  Neighbors, appellants in this appeal, first entered appearances at the Environmental Division.  The Environmental Division upheld the DRB's conditional-use and site-plan approval, but voided all but one condition prescribed by the DRB and required new modifications to the project.  In concluding its decision, the Environmental Division stated that Willowell shall file with the Monkton Zoning Administrator

a revised site plan incorporating the required changes, and that, upon receipt of the revised site plan, the Zoning Administrator shall issue a zoning permit consistent with the court's decision.

¶ 7.    Although the parties raised many issues in their briefing, motions, and arguments before the DRB and the Environmental Division, neighbors raise only four issues on appeal: (1) whether Willowell's application was fatally incomplete because it did not submit certain state permits with its conditional-use application; (2) whether the terms "Agricultural Reserve" and "Building Envelope" as used on the Hoag Farm Subdivision plat are enforceable land-use conditions restricting Willowell's property, and, if so, whether the proposed project complies with those conditions; (3) whether the Environmental Division erred in refusing to admit any extrinsic evidence to explain the conditions that were imposed on the Hoag Subdivision at the subdivision-approval meeting; and (4) whether the Environmental Division erred in directing the zoning administrator to issue a zoning permit upon receipt of a revised site plan. We review each claim in turn.

¶ 8.    The first issue can be easily resolved: neighbors waived their argument regarding state permits by not raising it at the Environmental Division, so we will not consider it. See V.R.C.P. 76(e); V.R.E.C.P. 5(f); In re Hale Mountain Fish & Game Club, Inc., 2014 VT 54, ¶ 18, 197 Vt. 217, 103 A.3d 890; In re Garen, 174 Vt. 151, 156, 807 A.2d 448, 451 (2002).

¶ 9.    Next, we must determine whether two phrases on the subdivision plat— "Agricultural Reserve" and "Building Envelope"—impose land-use restrictions on Willowell's project. Although additional language on the plat states, "Approved by resolution of the Town of Monkton . . . subject to all requirements and conditions of said resolution," the parties agree that no resolution or definition section applying to the plat exists. Under § 360(C)(4) of the UPD, a proposed conditional use cannot result in any "undue adverse effect" on the "bylaws and ordinances then in effect." UPD § 360(C)(4). Each subdivision must conform to the UPD and the goals of Monkton's plan. UPD § 900(C). Willowell's project must comply with the UPD,

4

including any applicable subdivision permit conditions.[*] In re Robinson, 156 Vt. 199, 202, 591 A.2d 61, 62 (1991) ("A violation of a condition of a subdivision permit would be a violation of the zoning ordinance itself.").

¶ 10.   Neighbors argue that Willowell's project violates specific conditions of the approved subdivision plan and, therefore, the project adversely affects Monkton's bylaws and ordinances.  In particular, neighbors claim the plat phrases "Agricultural Reserve" and "Building Envelope" impose land-use restrictions on Willowell's lot.   Neighbors assert the phrase "Agricultural Reserve" requires land to be set aside for agricultural use.  Thus, according to neighbors, Willowell violated the condition by planning to build nonagricultural structures— such as the farm-managers house and the swale—in the "Agricultural Reserve" area.  Second, neighbors claim that the "Building Envelope[s]" depicted on the plat are conditions restricting new buildings to areas within the envelopes.  Because portions of Willowell's project extend beyond the lot's "Building Envelope," neighbors contend Willowell's project violates existing subdivision conditions.

¶ 11.   Willowell disputes neighbors' interpretation of the subdivision plan.  It contends that the plat explicitly identifies the resolution of the planning commission as the location of any conditions and, without the missing resolution, the phrases on the plat cannot be used to infer permit conditions.  Specifically, Willowell argues that "Agricultural Reserve" is a vague phrase and, because land-use restrictions should be construed narrowly in favor of the landowner, any ambiguity should be decided in Willowell's favor.  Willowell advances similar arguments to refute neighbors' claim regarding the "Building Envelope" on its lot.  In addition, Willowell notes that its deed to Lot 6 contained no restrictive language limiting structures to the building

---

[*] We note that this appeal is confined to a review of Willowell's conditional-use permit, approved first by the DRB and subsequently the Environmental Division.  The appeal neither involves a proposed amendment to the subdivision, nor does it involve a private covenant or easement.  For that reason, our analysis rests solely on municipal and zoning precedent.

envelopes; by contrast, the deeds for Lots 2 through 5 limit construction to the building envelopes. Finally, Willowell claims that, even if the phrases are enforceable conditions, the project is consistent with both permitted and conditional uses under Monkton's bylaws.

¶ 12. The Environmental Division found that no existing document defined the twoword phrases or established that the phrases were meant to be enforceable conditions. As a result, the court held that no permit conditions existed and that Willowell did not need to comply with the alleged conditions. We affirm and hold that the terms appearing on the subdivision plat are not enforceable land-use restrictions.

¶ 13. We review the Environmental Division's legal conclusions de novo, In re Grp. Five Invs. CU Permit, 2014 VT 14, ¶ 4, 195 Vt. 625, 93 A.3d 111, but we will uphold those conclusions if "they are reasonably supported by the findings." In re Champlain Oil Co. Conditional Use Application, 2014 VT 19, ¶ 2, 196 Vt. 29, 93 A.3d 139. This deferential standard directs us to uphold the decision on the construction of a zoning ordinance unless it is "clearly erroneous, arbitrary, or capricious." In re Weeks, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). Moreover, even if controversial, conditional-use determinations must be upheld unless clearly erroneous. Stevens v. Essex Jct. Zoning Bd., 139 Vt. 297, 303, 428 A.2d 1100, 1103 (1981).

¶ 14. In effect, neighbors ask us to circumvent the permit amendment process; as a result, neighbors' claim does not rest on solid procedural ground. In this case, the DRB could review Willowell's conditional-use application only based on the recorded bylaws and the subdivision conditions in the application. See generally UPD §§ 360, 800. All parties agree that no recorded document describes or defines the alleged subdivision conditions; absent such a document, the Environmental Division held that the phrases on the plat could not be subdivision permit conditions as a matter of law. In short, the original and approved subdivision permit contained no conditions beyond the general zoning requirements in the UPD.

¶ 15.    Even if the purported subdivision conditions are appropriately before this Court, however, the two-word labels on the plat are not sufficiently clear to constitute land-use restrictions.    We have previously found that restrictions should be explicit to provide notice of all conditions imposed because "subsequent purchasers would lack notice of all restrictions running with the property."  In re Kostenblatt, 161 Vt. 292, 299, 640 A.2d 39, 43 (1994) (citing In re Farrell & Desautels, Inc., 135 Vt. 614, 616-17, 383 A.2d 619, 621 (1978) ("Conditions imposed by a zoning board must be expressed with sufficient clarity to give notice of the limitations on the use of the land.")).

¶ 16.    Analyzing our case law, the Environmental Division held that, absent an accompanying document, Willowell had no clear notice the two-word descriptions on the plat imposed enforceable conditions.  We agree.  As the Environmental Division noted, this Court enforced the label "common land" on a recorded plat in In re N. Acres, LLC, 2007 VT 109, ¶ 12, 182 Vt. 618, 941 A.2d 240 (mem.).  In doing so, this Court focused on the specific notice the plat provided to the applicant by "explicitly" referencing homeowner regulations prohibiting development on the "common land."  Id.  Thus, the plat and accompanying regulations sufficiently notified the applicant of applicable land-use restrictions.

¶ 17.    By contrast, in In re Stowe Club Highlands, 164 Vt. 272, 277, 668 A.2d 1271, 1275 (1995), we declined to enforce a "cryptic description of [a] meadow as an 'agricultural easement' " because no recorded permit conditions defined or described the two-word phrase.  In reaching this decision, we reiterated the principle that enforcing implied permit conditions would " 'impose a difficult if not impossible burden on interested parties to determine applicable regulatory standards.' "  Id. at 276 (quoting Kostenblatt, 161 Vt. at 299, 640 A.2d at 44.).  We concluded that enforcing the phrase "agricultural easement" as a condition read "far too much into a two-word description on a map unaccompanied by permit conditions."  Id. at 277.  These cases demonstrate two-word plat labels without an accompanying document do not provide the

7

"sufficient clarity" necessary to notify landowners of restrictions. Farrell, 135 Vt. at 617, 383 A.2d at 621.

¶ 18.    A fundamental land-use principle supports this requirement: zoning ordinances must be construed narrowly in favor of the landowner to minimize their hindrance on property rights. Weeks, 167 Vt. at 555, 712 A.2d at 910; Town of Westford v. Kilburn, 131 Vt. 120, 126, 300 A.2d 523, 527 (1973) ("Because zoning ordinances are in derogation of common law property rights, they are strictly construed."). Strict construction ensures that a landowner understands "what it can and cannot do with the land." In re Handy, 171 Vt. 336, 347, 764 A.2d 1226, 1236 (2000) (citation omitted). And, to be enforced, the conditions must be specific enough to provide a landowner with notice that his or her property rights are fettered. Farrell, 135 Vt. at 616-17, 383 A.2d at 621.

¶ 19.    The facts in this case exhibit why our precedent requires clear restrictions on land use. Under UPD § 260(A), permitted uses for Willowell's property include "Agricultural and forest uses," and "Accessory Buildings." The UPD's definition of "Agricultural Use" covers "farm structures" and its definition of "Accessory Buildings" comprises buildings "incidental and subordinate to the principal building located on the same lot." Based on these definitions, Willowell could reasonably assume "agricultural reserve" meant reserved for the exact sort of agricultural uses permitted in UPD § 260 and defined by the UPD. At the same time, Willowell would have no notice that—as neighbors argue—the two-word phrase further restricted the permitted uses of the land and precluded any building on the "best seven acres of farmland." No clear language contains this restriction. The plat merely contains two-word labels and pro forma language directing prospective owners to a resolution that does not exist. Cf. N. Acres, LLC, 2007 VT 109, ¶ 12 (rejecting applicant's contention that regulations referenced in plat did not apply). Moreover, even if Willowell assumed the areas labeled "agricultural reserve" and "building envelope" imposed heightened restrictions, Willowell's remaining land could be used

8

for permitted uses under our precedent and the UPD. See In re Stowe Highlands Merger/Subdivision Application, 2013 VT 4, ¶ 12, 193 Vt. 142, 70 A.3d 935 (refusing to interpret general designation of area on map to restrict other uses where not accompanied by other permit conditions).

¶ 20. Given our precedent requiring clear land-use restrictions, we conclude the Environmental Division did not abuse its discretion. We note that our holding does not categorically prevent all plat labels from imposing land-use restrictions. It is possible that a plat description could be specific enough to notify an owner of restrictions. Under the factual circumstances before us, however, the Environmental Division properly determined that the two-word phrases on the plat, without a clarifying document, did not impose subdivision conditions on Willowell.

¶ 21. We next turn to neighbors' argument that the Environmental Division incorrectly refused to admit extrinsic evidence to explain the conditions imposed at the subdivision-approval meeting. Because testimony offered at the subdivision-approval meeting pointed towards the subdivision developers' intent, neighbors claim the testimony should have been admitted to clarify ambiguities in the plat phrases, specifically the term "agricultural reserve."

¶ 22. The Environmental Division disagreed with this argument and distinguished between relevant evidence pertaining to Willowell's conditional-use application and irrelevant evidence referring to the vanished subdivision resolution. Employing this distinction, the court excluded neighbors' extrinsic evidence based on lack of relevance because the testimony during the subdivision-approval meeting referenced the missing resolution.

¶ 23. On appeal, Willowell adopts the Environmental Division's position regarding the relevance of the evidence. In addition, Willowell asserts that admission of the extrinsic evidence would not change the outcome of the proceeding. Although we believe that the court incorrectly

9

excluded the evidence based on relevance, we hold that the evidence's admission would not affect the result of this case.

¶ 24. The evidentiary issue is not one of relevance, but of ambiguity. Although we evaluate decisions regarding admissibility of evidence for abuse of discretion, Griffis v. Cedar Hill Health Care Corp., 2008 VT 125, ¶ 18, 185 Vt. 74, 967 A.2d 1141, we review decisions regarding the ambiguity of a written document de novo. Main St. Landing, LLC v. Lake St. Ass'n, Inc., 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (mem.). On one hand, Willowell claims the plat's two-word phrases, without an accompanying resolution, did not specifically notify Willowell of restrictive subdivision conditions. On the other hand, neighbors believe the circumstances surrounding the approval of the subdivision plan supported a different interpretation of the phrases. As such, an ambiguity exists. See Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 579, 556 A.2d 81, 84 (1988) (noting ambiguity exists when "a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable"). Further, neighbors' interpretation of the phrases depends on the testimony at the subdivision-approval meeting. Under our case law, such extrinsic evidence is relevant. Kipp v. Chips Estate, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999) (finding extrinsic evidence is relevant "only when, in combination with the writing, it supports an interpretation that is different from that reached on the basis of the writing alone").

¶ 25. Moreover, Willowell's theory of the case rests, to some extent, on the phrases' ambiguity: the unclear plat descriptions cannot provide notice, therefore neighbors' argument in favor of imposing subdivision conditions should fail. We have previously found that a party introducing a theory of ambiguity cannot then attempt to exclude extrinsic evidence clarifying the ambiguity. Blanche S. Marsh Inter Vivos Trust v. McGillvray, 2013 VT 6, ¶¶ 28-29, 193 Vt. 320, 67 A.3d 943 (finding plaintiff could not "challenge the trial court's consideration of

extrinsic evidence to interpret the documents"). Given these circumstances, the Environmental Division should have admitted the evidence as relevant.

¶ 26. There is, however, no indication that the improper exclusion of the evidence affected a substantial right of the party. See V.R.E. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). In other words, neighbors cannot "demonstrate 'prejudice' from the erroneous ruling." Jakab v. Jakab, 163 Vt. 575, 580 664 A.2d 261, 263 (1995). Even if the developer's testimony at the subdivision-approval meeting indicated the intent that the terms on the plat mean as neighbors have argued and that the DRB intended to impose additional conditions on the subdivision permit, no evidence exists demonstrating the conditions were incorporated into the final (and lost) resolution. This is particularly true in the zoning context because "conditions imposed by a zoning board . . . cannot incorporate by reference statements made by an applicant at a hearing." Farrell, 135 Vt. at 617, 383 A.2d at 621 (citation omitted). Therefore, we hold that inclusion of the extrinsic evidence would not affect the outcome of the case.

¶ 27. Finally, we address neighbors' argument that the Environmental Division improperly required the zoning administrator to issue a zoning permit upon receipt of a revised site plan. According to neighbors, the order forces the zoning administrator to issue a zoning permit even if the revised site plan contains a use that violates the UPD or existing subdivision-approval permit. Willowell disputes this claim and argues that neighbors are attempting to reargue the court's substantive decision regarding the lost subdivision resolution. Moreover, Willowell claims our case law indicates that the Environmental Division does not need to state all potentially applicable zoning requirements for its order to be effective. The Environmental Division found that a zoning administrator's role is ministerial and reiterated that Willowell must meet all the UPD requirements, even if the conditions were not contained in the order. We agree.

¶ 28. As the Environmental Division indicated, when a zoning administrator grants a zoning permit, it is a ministerial act. See In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 3, 188 Vt. 262, 6 A.3d 713. Thus, if Willowell's revised site plan satisfies the court's order as well as the UPD requirements, the zoning administrator will issue the permit. No discretion is involved. Further, the Environmental Division's order does not waive any additional or necessary zoning conditions imposed by the UPD. See Kostenblatt, 161 Vt. at 300, 640 A.2d at 44 ("It is an unnecessary and unreasonable burden to impose on zoning boards the duty to state all potentially applicable zoning requirements on every permit."). The Environmental Division was not required to list all of the potentially applicable regulations for the zoning administrator to consider. Id. As a result, the Environmental Division's order was not error.

¶ 29. For the reasons described, we hold the following in response to neighbors' claims: (1) by not presenting the argument to the Environmental Division, neighbors waived their claim regarding Willowell's lack of state permits; (2) the terms "Agricultural Reserve" and "Building Envelope" as used on the subdivision plat are not enforceable land-use conditions absent the referenced resolution; (3) although we find that the extrinsic evidence offered by the neighbors was relevant, the exclusion of the evidence did not affect a substantial right of neighbors; and (4) the Environmental Division did not err in directing the zoning administrator to issue a zoning permit on receipt of a revised site plan.

Affirmed.

FOR THE COURT:

_____
Associate Justice

12