STATE OF VERMONT

| Hinesburg Hannaford SP Approval | Docket No. 163-11-12 Vtec |
|---|---|

### Decision on Motion to Reconsider

On April 12, 2016, this Court issued its merits decision on the site plan application by Martin's Foods of South Burlington (Applicant) for the construction of a 36,000-square-foot Hannaford grocery store and 128-space parking lot (the Project) on Lot 15 of the Commerce Park subdivision in Hinesburg, Vermont.  See In re Hinesburg Hannaford SP, No. 163-11-13 Vtec, slip op. (Vt. Super. Ct. Envtl. Div. Apr. 12, 2016) (Walsh, J.).  Now before the Court is a motion to alter or amend our site plan decision filed by a group of Hinesburg residents opposed to the Project (Appellants).[1] Appellants raise seven issues that they argue warrant reconsideration and an amended decision, claiming: 1) that we erred in finding an alleged 75-foot setback in the Hinesburg Planning Commission's final plat approval for the Giroux 15-Lot Commercial Subdivision, unenforceable; 2) that it was improper for Applicant to challenge the enforceability of the setback after the close of evidence; 3) that by challenging the enforceability of the setback, Applicant mounted an impermissible collateral attack on the condition; 4) that our approval of Applicant's stormwater system disregarded necessary permits; 5) that our factual findings concerning the stormwater impacts lacked footing in the record; 6) that our approval of a 200-foot east-west grass treatment swale on the northern border of Lot 15 (the East-West swale) relied on an impermissible condition subsequent and future permitting; and 7) that certain traffic mitigation measures fail to satisfy the Hinesburg Zoning Regulations and deny Appellants their statutory role in the proceedings.

V.R.C.P. 59(e) gives this Court the broad power to alter or amend a judgment "if necessary to relieve a party against the unjust operation of the record resulting from the

---

[1] We note that Appellants move under both V.R.C.P. 59(e) and 60. As this motion was filed within ten days of our decision, and raises substantive grounds for reconsideration, we treat it as a motion under V.R.C.P. 59(e). See Reporter's Notes, V.R.C.P. 59(e).

mistake or inadvertence of the court and not the fault or neglect of a party." <u>Rubin v. Sterling Enterprises, Inc.</u>, 164 Vt. 582, 588 (1996); Reporter's Notes, V.R.C.P. 59(e). There are four principal reasons for granting a Rule 59(e) motion: (1) "to correct manifest errors of law or fact upon which the judgment is based"; (2) to allow a moving party to "present newly discovered or previously unavailable evidence"; (3) to "prevent manifest injustice"; and (4) to respond to an "intervening change in the controlling law." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2810.1; see <u>In re Zaremba Group Act 250 Permit</u>, No. 36-3-13 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Apr. 10, 2014) (reviewing a motion made pursuant to V.R.C.P. 59(e) using four grounds from the federal rule). Granting a motion to alter or amend "a judgment after its entry is an extraordinary remedy which should be used sparingly." <u>Zaremba</u>, No. 36-3-13 Vtec, at 2 (quoting 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2810.1).

Appellants have not identified any newly discovered evidence, and there has been no offer of a change in controlling law. We therefore only consider whether the motion identifies manifest errors of law or fact in our decision, or establishes that an altered or amended decision is necessary to prevent manifest injustice. See <u>Zaremba</u>, No. 36-3-13 Vtec, at 2.

Further limiting the scope of our decision, a Rule 59(e) motion is not an opportunity to present arguments or evidence that could have been raised prior to entry of the judgment, and mere disagreement with the Court's decision will not sustain a motion to reconsider. Put simply, we will not entertain efforts to reargue the merits of the case that were properly before us at trial. To that end, we read Appellants' motion with a critical eye and will quickly dismiss those arguments that essentially re-hash what has already been raised and decided.

## 1. Enforceability of Building Setback

Appellants first claim that the record contradicts our conclusion that there is no enforceable 75-foot setback provision in the Giroux 15-Lot Commercial Subdivision Final Plat Approval (Final Plat Approval).[2] Appellants specifically point to the phrase from our merits

---

[2] In our Decision on the Merits in Docket No. 163-11-12 Vtec, we mislabeled the subdivision approval with the year 1987. We note that final plat approval occurred in December of 1986. To clarify, the terms subdivision

decision where we said "there is no writing that would indicate an intent to impose a setback." In re Hinesburg Hannaford Site Plan Approval, No. 163-11-12 Vtec, slip op. at 22 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2016). Appellants claim that this statement demonstrates a factual error since the Final Plat for the Giroux 15-Lot Commercial Subdivision (Plat), labels one of the lines in the key as "Building Setback Limit." See Appellants' Ex. Courtney C. In our decision we specifically identify the fact that the key on the Plat labels a particular line the "Building Setback Limit," and describe how there is no writing that explains what the setback is or that a setback was intended as part of the Final Plat Approval. Accepting that the Plat labels a certain type of line as identifying the building setback limit, nowhere on the Plat itself is a specific setback distance mentioned, and the written Final Plat Approval by the Hinesburg Planning Commission is completely devoid of any mention of setbacks. See Appellants' Ex. Courtney B. Therefore, as our decision makes clear, we are not ignoring the fact that the Plat labels one type of line as demarcating building setbacks, but rather we conclude that the three-word label, without any written permit condition or any mention of setbacks at all in the Final Plat Approval does not establish a clear permit condition.

This lack of any description or clear intent was the same situation addressed by the Vermont Supreme Court in In re Willowell Found. Conditional Use Certificate of Occupancy, 2016 VT 12, ¶ 16, where the Court found that a two-word description on the plat failed to impose an enforceable condition where there was no recorded permit condition or accompanying description of the phrase. In Willowell, the Court emphasized the principle of construction that zoning ordinances act in derogation of private property rights and thus must be read narrowly. Id. ¶ 18. To be enforced, a condition must be explicit and sufficiently clear to notify landowners of the restriction on their use of the property. Id. ¶ 15. Therefore, here, we reaffirm our holding that a line in the key on the Plat labelled as the setback limit is, alone, insufficient to create a binding 75-foot setback limit when there is no mention of setbacks in the written Final Plat Approval.

---

approval or the 1987 Commerce Park subdivision approval reference the Hinesburg Planning Commission's written Final Plat Approval of the Giroux 15-Lot Commercial Subdivision, provided as Appellants' Ex. Courtney B.

## 2. Raising Legal Argument After the Close of Evidence

Appellants next argue that because Applicant did not raise the legal theory of the unenforceability of the alleged setback contained in the Final Plat Approval until after the close of evidence, we erred in considering it. Further, Appellants argue, that they are now entitled to an opportunity to reopen the evidence in order to present evidence rebutting Applicant's untimely legal argument as they were not aware such evidence would be relevant. We find neither of Appellants' claims persuasive.

First, we are unaware of any requirement that a party raise all legal arguments before the close of evidence. Through Appellants' Question 7 and Parts 1 and 2 of their motion for entry of judgment, Appellants challenged the Project's conformance with subdivision setbacks. Applicant initially argued that there was no request for a subdivision amendment, and thus those questions were beyond the scope of our review. Later, Applicant argued that, to the extent conditions of the subdivision approval were considered zoning restrictions and thus reviewable in the site plan application, there was no enforceable setback condition that was part of the subdivision approval. We see no error in considering either of Applicant's defenses to the issues raised by Appellants in their Statement of Questions and in their motion for entry of judgment.

Second, reopening the evidence is not warranted. We treat a motion to reopen the evidence as a motion for a partial new trial under V.R.C.P. 59(a) and (d). It is within this Court's discretion to grant such a request. See In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 16, 195 Vt. 586. Reopening the evidence may be allowed in the case of newly discovered evidence or previously unavailable evidence. See 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2810.1. Where that evidence could have been presented at trial, however, we need not reopen the case. See Goslant v. Goslant 130 Vt. 210, 212 (1972).

Appellants suggest that because Applicant did not raise the legal argument of unenforceability until after the close of evidence, Appellants were unaware of the relevance of the evidence they now seek to introduce. Appellants have continuously argued that the Project must comply with the alleged subdivision setback provision. Appellants were thus adequately aware of the need to support the existence and enforceability of such a setback. The fact that

4

Appellants may have overlooked the need to introduce this evidence does not establish that the trial should be reopened.[3]  We therefore deny Appellants' request to reopen the evidence.

### 3. Whether Challenge to Enforceability was a Collateral Attack on Permit Condition

Appellants next argue that we improperly allowed Applicant to collaterally attack the Final Plat Approval by considering Applicant's argument that the subdivision approval did not contain an enforceable setback condition.[4]  Appellants misconstrue the facts before us and the legal implications of 24 V.S.A. § 4472(d).  We agree that 24 V.S.A. § 4472(d) establishes that an unappealed permit condition cannot be collaterally attacked in a later proceeding.  In order for Section 4472(d) to apply, however, there must be a final unappealed permit condition.  As this Court and the Vermont Supreme Court have repeatedly held, a permit condition must be "expressed with sufficient clarity to give notice of the limitations on the use of the land." Appeal of Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978); see also In re Byrne Trusts Nov, No. 150-7-08 Vtec, slip op. at 14 (Vt. Envtl. Ct. July 15, 2009).  Applicant's claim that it need not comply with a 75-foot setback was not barred by Section 4472(d), for, as we explained in our merits decision, there was no enforceable setback condition contained in the Final Plat Approval.  Appellants' argument in its Rule 59 motion assumes the existence of an express permit condition, ignoring our lengthy discussion on whether a setback condition can be found in the Final Plat Approval in the first place.  We therefore deny Appellants' request to revise our holding.

### 4. Approval of Stormwater Discharge System Under Commerce Street

Prior to trial, Appellants argued that the Town of Hinesburg was a necessary co-applicant because Applicant proposed to run 300 feet of stormwater piping under Commerce

---

[3] We note that after trial, Applicant sought to offer evidence that there had been revisions to the Plat and Final Plat Approval.  Appellants opposed the motion, claiming that the evidence should have been offered at trial. We agreed with Appellants when they opposed Applicant's offer, and applying their own arguments to their offer here, we find that reopening the evidence is not warranted.

[4] Appellants also argue that the setback condition was offered by the owner of Lot 15 during the subdivision approval process, and thus, because the landowner is a now a co-applicant with Martin's Foods of South Burlington, it cannot challenge the enforceability of a condition it proposed. We have no evidence of the origin of the conditions of the Giroux 15-Lot Commercial Subdivision, thus we do not consider this claim in our analysis.  It appears that Appellants seek to offer additional evidence to support their argument; however, Appellants have failed to establish that this evidence was not available at trial, and we therefore deny any request to re-open the evidence on this matter.

Street, a Town-owned road, and Applicant would need a zoning permit from the Town to do so. In pre-trial decisions, we explained that the Town need not be a co-applicant for site plan approval, but that Applicant may need a permit from the Town pursuant to 19 V.S.A. § 1111 before it could install the stormwater pipe under Commerce Street. See In re Hinesburg Hannaford CU, No. 129-9-12 Vtec, slip op. at 12 (Vt. Super. Ct. Envtl. Div. Sept. 16, 2015); In re Hinesburg Hannaford CU, No. 129-9-12 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Oct. 27, 2015). Applicant now argues that our merits decision appears to grant Applicant "complete approval to proceed forward with the project" even though Applicant has not received a Town permit for the piping, and asks us to explicitly hold that Applicant cannot proceed forward until it receives a permit from the Town for the 300 feet of stormwater piping under Commerce Street. Appellants' Rule 59 and 60 Mot. at 7, filed May 2, 2016.

This claim is a rendition of a familiar argument that we have repeatedly rejected. In approving Applicant's site plan application, we found that Applicant's stormwater plans, which include a 300-foot pipe under Commerce Street, met applicable regulations. We did not address whether Applicant may need subsequent approvals for various aspects of the Project, including a Section 1111 permit from the Town for the stormwater piping. At the time of our decision, a zoning permit for the piping had not been sought, and the issue was not before us. To reach the issue would have been improper. See In re Intervale Center, Inc., No. 89-5-08 Vtec, slip op. at (Vt. Envtl. Ct. Feb. 24, 2009) (holding that court can only rule on issue if it presents a live case or controversy). We therefore deny Appellants' request to opine on subsequent approvals that Applicant may require before all aspects of the Project may be constructed.

## 5. Factual Findings about Stormwater Lacked Footing in the Record

Appellants argue that their expert's testimony about the Project's stormwater impacts during the 50- and 100-year storm events went uncontradicted and that our holding approving the Project's stormwater system lacked adequate footing in the record. Appellants have made clear that they disagree with the Court's holding regarding the Project's stormwater impacts. Such a disagreement is not, however, sufficient grounds for a motion to reconsider. The evidence Appellants now cite was properly before us and considered when we issued our

decision, and Appellants' contention that their evidence went unrefuted is not correct. Ultimately, Appellants' arguments are an effort to reargue issues that were previously presented and considered, and fail to identify any manifest errors of law or fact. We therefore deny Appellants' request to reconsider and alter our decision.

### 6. East-West Grass Swale

Appellants claim that it was an error of law to approve Applicant's stormwater system because the proposed 200-foot long grass swale that runs east to west along the northern border of Lot 15 (the East-West swale) will not function properly. Appellants argue that their witnesses' unrebutted testimony established that the swale will be inundated with standing water, will be clogged with excess vegetation, and will provide a breeding ground for mosquitoes. We do not agree with Appellants' rendition of the facts. At trial, Applicant offered testimony and detailed plans for the East-West swale. This evidence included design specifications and performance criteria. In approving Applicant's stormwater measures, which relied on the East-West swale to meet applicable regulatory standards, we did not rely on future permitting or an improper condition subsequent; rather, we held that the grass swale Applicant proposes—one that will perform to the standards Applicant represents—meets applicable stormwater regulations. Appellants' hypothetical scenarios of dysfunction are not the conditions we approved. If Applicant installs a grass swale that performs differently than offered, or that does not conform to the evidence presented, then Applicant will be in violation of its site plan approval. We therefore DENY Appellants' request to alter our decision concerning the East-West swale.

### 7. Traffic Mitigation Measures

Lastly, Appellants challenge two of the traffic mitigation conditions we imposed in our Act 250 approval. First, they argue that it was improper for this Court to only require Applicant to pay its proportional share of the traffic signal at the Mechanicsville Road and Route 116 intersection. Second, Appellants assert that our condition requiring the Town and Applicant to conduct a post-development traffic study of the Route 116 and Commerce Street intersection deprives Appellants of their statutory role in the proceedings because Appellants were not afforded a role in the study.

Traffic is relevant to our site plan approval through the 2009 Hinesburg Zoning Regulations (Regulations) § 4.3.4(1), which provides that the Court "shall take into consideration" the "[s]afety of vehicular and pedestrian circulation on site and on the adjacent street network." In our site plan decision, we explained that the Project met this provision in part because of the traffic conditions we imposed in our Act 250 approval. We did not, however, impose either of the two challenged conditions as part of our site plan approval. We thus question whether these concerns are appropriate for Appellants' Rule 59 motion in the Hannaford site plan matter, Docket No. 163-11-12 Vtec. Furthermore, Appellants have raised nearly identical challenges in their Rule 59 motion in the related Act 250 matter, Docket No. 113-8-14 Vtec, and we fully address Appellants' concerns there. Nevertheless, we will briefly address the issues here.

Turning fist to the traffic signal, the uncontradicted evidence was that the Mechanicsville Road and Route 116 intersection currently experiences significant delays and congestion and is at an unacceptable level of service (LOS). We cannot deny a project that contributes to or exacerbates unreasonable congestion or unsafe conditions, but we can and must impose mitigation to alleviate the unacceptable condition. See In re Agency of Transp., 157. Vt. 203, 207 (1991). A traffic signal was the only mitigation offered for the existing and projected traffic conditions at the Mechanicsville Road and Route 116 intersection, and no party that participated at trial, including the Town of Hinesburg and the Natural Resources Board (NRB), challenged the need for a signal or its appropriateness in addressing the traffic conditions at the intersection. It was also undisputed that Applicant was not the sole cause of the traffic problem—by Applicant's calculations, the Project will contribute 9% of the traffic at the intersection. We therefore concluded that a traffic signal was necessary mitigation, but that Applicant need only pay its proportional share. We were clear, however, that the traffic signal must be installed before the Project could move forward.

Appellants now claim that we erred by not ordering Applicant to pay the full cost for the traffic signal because the Regulations require full payment of necessary mitigation by a project applicant, and we have no authority to require other parties to contribute to necessary mitigation. Meanwhile, Applicant suggests that it should only be required to escrow $25,000—about 9% of the total cost of the signal. Appellants fail to cite any provision of the Regulations

8

for their assertion that an applicant must pay for all mitigation, and we find no support for this in the language of Section 4.3.4(1). Based upon the evidence before the Court, we must impose necessary mitigation in order to alleviate traffic impacts at the Mechanicsville Road and Route 116 intersection. We have no evidence as a basis to establish and delineate the details of the financing or implementation of such mitigation. We acknowledge that Applicant is not the sole cause of traffic concerns at the light, but only escrowing a proportion of the cost will not ensure the mitigation is implemented. We therefore require that a traffic signal is installed before the Project is completed. To clarify, while we only require Applicant to pay its proportional share, Applicant may have to front the entire cost of the signal if it wants to proceed with the Project, because without the signal the Project lacks our approval. Applicant is free to enter into financing arrangements with other parties, and we make no attempt to offer details of such an arrangement. We therefore deny Appellants' request to alter our decision concerning the traffic signal.

As to the follow-up traffic study, upon further review of the evidence and in light of the participation concerns raised by Appellants, we conclude that the traffic mitigation measures are sufficient without a post-development study. The removal of this condition in no way changes our conclusion concerning Section 4.3.4(1) of the Regulations. As we did not impose the traffic study as part of our site plan approval, we need not alter our decision and therefore deny Appellants' request.

Conclusion

Our decision here clarifies our April 12, 2016 Decision on the Merits in Docket No. 163-11-12 Vtec. Appellants fail to identify any manifest errors of law or fact or establish that our decision will result in manifest injustice, and we therefore **DENY** Appellants' motion to alter or amend our final decision on the merits. As a result, no amended decision is necessary.

Electronically signed on July 07, 2016 at 09:32 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge

9

Superior Court, Environmental Division