STATE OF VERMONT

| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 12-2-17 Vtec |
|---|---|
| Andreen CU Permit | DECISION ON THE MERITS |

This is an appeal from a decision by the Town of Winhall Zoning Board of Adjustment (ZBA) granting a conditional use permit to Lynne Andreen[1] to operate a bed and breakfast. The decision was appealed by a group of neighbors[2], and subsequently cross-appealed by Stratton Corporation (Stratton).

The Court held a trial on January 3, 2018. At the parties' direction, the Court did not conduct a site visit. The trial was held at the Vermont Superior Court, Bennington Criminal Division, Bennington, Vermont. Ms. Andreen is represented by Jeremy Dworkin, Esq. Stratton is represented by Lisa B. Shelkrot, Esq. The neighbors are represented by Hans G. Huessy, Esq.

Based upon the evidence presented at trial, the Court renders the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1. The Andreen home is located at 11 Founders Hill Road in an area commonly known as Founders Hill in Windhall, Vermont.

2. The home is in an area designated in the Town of Winhall Zoning Regulations (Amended March, 2011) as the Recreational District.

3. The area of Founders Hill is generally single-family homes on 0.5 to 1.0 acre lots. A majority of the lots have been developed and the homes are upscale in quality.

4. The area is generally quiet and residential in nature with light traffic.

5. The area is also characterized as vacation homes with mostly winter use and some year-round use.

---

[1] Lynne Andreen appears as the owner and applicant. David E. Lyon was afforded party status in the pre-trial stages of this matter. At trial Mr. Lyon testified that he resides with Ms. Andreen at the subject property.

[2] Larry and Kim Wohler, Nancy Pritchard, and D.W. Porto.

6. There is little home turn-over in Founders Hill.

7. Approximately 0.25 miles to the Southeast is the Stratton Mountain Club located in the neighboring town, Stratton, Vermont. The club provides amenities including lockers, a restaurant, ski-on and ski-off services, shuttle service, and wedding and event facilities. There are approximately 300 club members.

8. Service trucks regularly supply the club. Attendees of club events occasionally park on the street close to the Andreen home.

9. Single-family homes in the general area are rented for single family use on daily, weekly, and monthly bases. The evidence conflicted as to how many homes are rented. The evidence did show that renting is not an uncommon feature of the area.

10. Two examples are 2 Flowing Springs and 22 Sawmill Road which were rented in 2014, 2015, and 2016.

11. Nancy Richie Pritchard resides at 2 Flowing Spring Road, Windhall, which is located across street from the Andreen home. She rents 5 to 10 nights per year as a single-family home.

12. Stratton offered a copy of a Declaration of Protective Covenants, Restrictions and Reservations (the Protective Covenant) as evidence of the character of the area.

13. In the Private Residential Area section of the Protective Covenant, which includes the Andreen home, "[n]o residence lot shall be used except for residential purposes by one family residing in a detached, single-family dwelling." See Section E.1. Additionally, "[n]ot more than two boarders or paying guests shall be permitted in the buildings erected upon a residence lot, but either guest house or single-family dwelling may be rented as a unit." See Section E.3.

14. The commercial area of Stratton is approximately 0.5 miles from the Andreen home.

15. In 2013, Ms. Andreen applied for conditional use approval of a bed and breakfast and yoga studio at her home. This included parking for eight cars; six outside in the driveway and two in the garage.

16. The ZBA concluded that increased traffic flow from overnight users and day guests, and inadequate parking, would have an adverse impact on the character of the area, and it denied the application. The ZBA decision does not distinguish impacts from the bed and breakfast use from impacts from the yoga studio. That decision was not appealed.

17. Ms. Andreen now seeks conditional use (CU) approval for a bed and breakfast allowing rental of four bedrooms, outside parking in the driveway of four cars (attributable to bed and

2

breakfast customers), and two cars to be parked inside the garage for applicant and her partner (residents of 11 Founders Hill Road).

18. While the subject home has an existing yoga studio, the CU application does not seek approval of yoga amenities.

19. The ZBA approved the application to operate a bed and breakfast on January 19, 2017. Ms. Andreen has been operating the bed and breakfast since that time.

20. The Andreen home has no signs or other physical means of advertising that it is a rentable bed and breakfast.

21. Ms. Andreen's bed and breakfast has limited truck traffic delivering supplies to the establishment. Guest arrivals and departures and truck deliveries associated with the bed and breakfast minimally increase traffic in the area.

22. The Andreens occasionally park on the street. When the Andreens park in the street Nancy Richie Pritchard has a harder time exiting her driveway at 2 Flowing Spring Road. The Andreens sometimes park on the wrong side of the road.

23. On at least one occasion a delivery truck parked on the street at the Andreen house.

24. When cars and trucks park on the street, the road is effectively reduced to one lane, which restricts traffic flow.

25. On one occasion a neighbor encountered a group of women who he believed were intoxicated, and were guests of the bed and breakfast, walking on the street.

## Conclusions of Law

A. Successive Application Doctrine:

Appellants assert that judgment should be rendered against Applicants based on the argument that Applicants' most recent application is barred by the successive application doctrine.

The successive application doctrine is "an application of claim preclusion, or res judicata," which generally bars a municipal panel from considering a zoning application after a previous application concerning the same use on the same property has been denied. In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶¶ 58–59, 199 Vt. 19 (citing Application of Carrier, 155 Vt. 152, 158 (1990)); 24 V.S.A. § 4470(a). The doctrine applies when the use proposed in the second application is identical to, or virtually identical to, that proposed in the first. 24 V.S.A. § 4470(a) (allowing a municipal panel to reject an appeal when "the issues raised by the appellant in the

3

appeal have been decided in an earlier appeal or involve substantially or materially the same facts by or on behalf of that appellant"); Lathrop Ltd. P'ship, 2015 VT 49, ¶ 53 (applying doctrine where applicant "presented a virtually identical proposal"); In re: Appeals of Lisa Miserendino, et al, Nos. 85-5-99 Vtec, 191-10-99 Vtec, slip op. at 1 (Vt. Evtl. Ct. Jan. 13, 2000) (Wright, J.) ("only an identical application would be barred as an impermissible successive application"); C.f. Werner Conditional Use, No. 44-4-16 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Jul. 26, 2017) (Durkin, J.); Bold Zoning Permit Amendment, No. 130-11-15 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Dec. 16, 2016) (Durkin, J.).

The successive application doctrine does not apply if "'a substantial change of conditions had occurred or other considerations materially affecting the merits' of the request have intervened between the first and second application." Carrier, 155 Vt. at 158 (quoting Silsby v. Allen's Blueberry Freezer, Inc., 501 A.2d 1290, 1295 (Me. 1985)). We have held that the "substantial change of conditions . . . or other considerations" can occur in two ways. First, the successive application does not apply if the second application is altered in a way that addresses the concerns that caused the first application to be denied. In re Dunkin Donuts S.P. Approval (Montpelier), 2008 VT 139, ¶¶ 8, 13, 185 Vt. 583. Second, the successive application does not apply if the law or regulation that controls the application materially changes in a way that will benefit the application. Bold Zoning Permit Amendment, No. 130-11-15 Vtec, slip op. at 4–5 (Vt. Super. Ct. Envtl. Div. Dec. 16, 2016) (Durkin, J.).

Appellants offer that there are two separate prior applications and decisions from 2013—one for a yoga studio and one for a bed and breakfast—and that the prior bed and breakfast application, and denial of that application, preclude any consideration of the present application under the successive application doctrine.

We disagree. There is only one application and only one decision from 2013. At best, the 2013 decision considers two business undertakings. The ZBA decision, however, does not separate out conclusions based on two different businesses. Rather, the decision is based on additional traffic generated by overnight guests and day users (not specifically allocated to either business undertaking), transient visitors, and inadequate parking. Because the use proposed in 2013 is not identical to that proposed in 2016, it is not clear that the successive application doctrine applies. See 24 V.S.A. § 4470(a); Lathrop Ltd. P'ship, 2015 VT 49, ¶ 53.

4

Even if the successive application doctrine does apply, the 2016 application substantially changes the proposed use to address the reasons that the earlier application was denied. Removing the yoga studio will eliminate the more transient "day users" by limiting guests to those staying at the bed and breakfast. Without the yoga studio, traffic and the number of cars parking at the Andreen home will also be reduced. While the 2013 application included parking for eight cars, the 2016 application includes parking for six cars.

We conclude that the two applications are sufficiently similar; the 2013 decision could have a preclusive effect on the 2016 application. We also conclude that the reason that caused the 2013 application to be denied—traffic and parking—is addressed in the 2016 application by eliminating the yoga studio and reducing the number of parking spots. These changes are sufficiently substantial in nature and respond to objections raised in the original application. For this reason, we conclude that consideration of the application before the Court is not barred by the successive application doctrine.

B. Impact on Character of Area:

Under the Town of Windhall's Zoning Regulations (Regulations),[3] conditional use applicants must demonstrate that their uses comply with general standards (Regulation Section 415.1), specific standards (Regulation Section 415.2), and performance standards (Regulation Section 415.3). At the conclusion of trial, the parties confirmed that the dispute is limited to General Standard 415.1, Subsections b "The character of the area affected" and 415.1, Subsection c "Traffic on streets and highways in the vicinity." Our review is therefore limited to these two subsections.

a. *Legal Standard for "Character of the Area"*

The Conditional Use General Standards set out in the Regulations mandate that a "proposed use shall not adversely affect . . . [t]he character of the area affected." Regulation § 415.1(b). This mirrors former statutory language allowing conditional use designation, which required conditional use regulations to include "general standards [that] shall require that the proposed conditional use shall not adversely affect . . . [t]he character of the area affected." 24 V.S.A. § 4407(2)(A) (repealed by 2003, Adj. Sess. No. 115).

---

[3] Admitted at trial as Exhibit F.

This enabling statute was rewritten as part of the 2004 Permit Reform Act. 2003, Adj. Sess. No. 115. The new statute calls for conditional use regulations to:

> require that the proposed conditional use shall not result in an *undue* adverse effect on . . . the character of the area affected, *as defined by the purpose or purposes of the zoning district within which the project is located, and specifically stated policies and standards of the municipal plan*.

24 V.S.A. § 4414(3)(A)(ii) (emphasis added).

The new enabling statute differs from the old in two principal ways. First, it includes a new clause defining the character according to the policies and purposes of zoning regulations and municipal plans. Second, it replaces "shall not adversely affect" with "shall not result in an undue adverse effect."

Municipalities were instructed to update their conditional use regulations to conform with this new language by September 1, 2011. 24 V.S.A. § 4481. Nevertheless, we have held that a municipality's decision not to update conditional use regulations from language that mirrors former § 4407(2)(A) after September 11, 2011 does not invalidate those regulations. In Rublee 246 White Birch Lane CU, No. 140-11-15 Vtec, slip op. at 8 n.3 (Vt. Super. Ct. Envtl. Div. Aug. 23, 2016) (Walsh, J.). We interpret the decision to retain the language of § 4407(2)(A) to mean that the municipality wants conditional use determination to take into account both the character of the area as it exists (as was done under the former enabling statute) and the character of the area as defined in purpose and policy statements in the zoning regulations and municipal plan (as is called for in the new enabling statute). Id.

We have also held that the terms "shall not adversely affect" and "shall not result in an undue adverse effect" are "interchangeable in application." In re Grp. Five Inv., LLC Conditional Use Application, No. 34-3-11 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Dec. 4, 2012) (Durkin, J.) aff'd sub nom. In re Grp. Five Investments CU Permit, 2014 VT 14, 195 Vt. 625, overruled in part on other grounds by In re Confluence Behavioral Health, LLC, 2017 VT 112 (Vt. Dec. 8, 2017). Under either language we have applied the two-step approach set out in Quechee test: first, we look at whether the proposed use would have an adverse impact and, if so, we then determine whether that adverse impact would be undue. Id. at 12–13; Willowell Found. CU, No. 142-10-12 Vtec, slip op. at 21 (Vt. Super. Ct. Envtl. Div. Jul. 10, 2014) (Walsh, J.), aff'd sub nom. In re Willowell Found. Conditional Use Certificate of Occupancy, 2016 VT 12, 201 Vt. 242, overruled in part on other grounds by Confluence Behavioral, 2017 VT 112.

6

In short, then, our task here is to determine whether Ms. Andreen's bed and breakfast will have an undue adverse impact on the character of the area, as it is defined by both the purpose statement in the Regulations and by the existing uses in the area.

b.   *Whether Ms. Andreen's Bed and Breakfast Will Have an Undue Adverse Effect on Character of the Area*

Ms. Andreen's bed and breakfast will not have an undue adverse effect on the character of the area, as defined either by the purpose statement of the Recreational District or the existing uses in the area.

The Bylaws express the following purpose for the Recreational District:

> The Recreational District is established as areas to provide various recreational opportunities for residents and visitors alike, as well as a variety of housing and related commercial uses. Commercial development, where feasible, shall support residential and recreational uses and shall be clearly secondary to the commercial uses in Bondville/Village District . . . .

Regulation § 303.   This purpose does not provide any specific or concrete prohibition of bed and breakfasts. It merely reflects an attempt to balance recreational opportunities and residential and commercial uses.

To the extent this purpose statement imposes enforceable limits on conditional uses in the Recreational District, Ms. Andreen's bed and breakfast is within these limits. The bed and breakfast does not involve construction that would distinguish the property or home from typical single-family homes in the area. We cannot say that the bed and breakfast will upset the balance between recreation and residential living envisioned for the Recreational District, or that Ms. Andreen's bed and breakfast will have an adverse effect on this purpose. If anything, we can assume that guests at the bed and breakfast will access, and thereby support, local recreational uses (which, under the purpose statement, are intended for both residents and visitors). We therefore conclude that the proposed use will not create an adverse effect on the purpose of the Recreational District.

We also conclude that Ms. Andreen's bed and breakfast will be consistent with existing uses in the area. The neighborhood contains a mix of year-round homes, seasonal second homes, and short-term vacation rentals.

It is significant that renting of homes in the area is common. In reviewing the proposed bed and breakfast's potential impact on the area, we distinguish renting a room within a bed and breakfast from renting an entire single-family home, because the bed and breakfast use can be a

7

more intense use than occasional single-family home rental; meaning more frequent days of rental by different people. The impact frequent rentals could adversely impact the existing character of the area. This will not, however, involve an increase in intensity to a degree that would have an undue adverse impact on the existing character of the neighborhood. The use will minimally add to traffic from guests and truck deliveries, but will not represent much of an increase from existing car and truck traffic. We cannot conclude that the number of cars parked in the Andreen driveway will unduly adversely impact the character of the area, or that a single example of intoxicated guests represents any kind of trend or pattern that would affect the neighborhood. While neighbors suggest that the bed and breakfast may adversely affect home values in the area, the evidence presented on this point was inconclusive.

Stratton offered the Protective Covenant into evidence asserting that the proposed bed and breakfast was prohibited. Ms. Andreen objected to the document on relevancy grounds and that the Environmental Division is without jurisdiction to consider the legal significance of the document. While it is true that private property rights are beyond the jurisdiction of the Environmental Division, In re Woodstock Cmty. Tr. & Hous. Vermont PRD, 2012 VT 87, ¶ 40, 192 Vt. 474, holding modified by In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 40, 199 Vt. 19 (citation omitted), during trial we admitted the document to the extent it provides evidence as to the character of the area. We also expressly acknowledged that we would give the document appropriate weight as we consider the totality of evidence.

In reviewing the Protective Covenant, we note that within the Private Residential Area section, which includes the Andreen home, "[n]o residence lot shall be used except for residential purposes by one family residing in a detached, single-family dwelling." See Section E.1. Additionally, "[n]ot more than two boarders or paying guests shall be permitted in the buildings erected upon a residence lot, but either guest house or single-family dwelling may be rented as a unit." See Section E.3.

The use proposed pursuant to the application before the Court is a residential purpose; that being a guest using a bedroom to stay the night and possibly having a meal. Thus, the proposed use is residential in nature and boarders or paying guests are permitted. While it is beyond our jurisdiction to opine on the legal effect of the Protective Covenants, we conclude that on its surface the document does not suggest that the proposed bed and breakfast does not comply with the character of the area.

We therefore conclude that Ms. Andreen's small-scale bed and breakfast is not substantially different than other uses in the area, and will suit the existing character of the Recreational District.

Because we find that Ms. Andreen's bed and breakfast is consistent with the stated purpose of the Recreational District and that it will complement the existing uses in the area, we conclude that Ms. Andreen's proposed bed and breakfast will not have an undue adverse effect on the character of the area.

The neighbors also offer that allowing this bed and breakfast will "open the door" to additional future bed and breakfasts causing an incremental shift eventually leading to dominate commercial uses in the area, and thus, the result it an adverse effect on the character of the area. We decline to take on this futuristic review. First, the offer is speculative. Second, our review focuses on the application before the Court and its potential to impact the existing neighborhood. In doing this review, we do not consider and weigh the impact that the proposed use might have on land uses that may potentially be proposed in the future. In re JLD Properties of St. Albans, LLC, No. 129-5-06 Vtec, slip op. at 40 (Vt. Envtl. Ct. Jan. 20, 2010) (Durkin, J.); In re: Appeal of Ran-Mar, Inc, No. 268-11-00 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 10, 2001) (Wright, J.).

C.  Impact on Traffic

The next issue is whether Ms. Andreen's bed and breakfast will "adversely affect . . . traffic on streets and highways in the vicinity." Regulations § 415.1(c). As with our analysis above, we consider here whether the proposed use will have an *undue adverse impact* on traffic.

The roads leading to Founders Hill road are all large enough that the additional traffic trips from a four-room bed and breakfast will have little to no impact on the level of service. Rather, the neighbors offer that delivery trucks and cars parked in the street pose congestion and safety concerns.

When cars or a delivery truck park in the road rather than within a driveway or garage, it reduces the ease of emergency vehicle passage because it reduces travel to a single lane. Additionally, when the Andreens park in the street Nancy Richie Pritchard has a harder time exiting her driveway at 2 Flowing Spring Road. Furthermore, it is noted that the Andreens sometimes park on the wrong side of the road.

Car and delivery truck street parking raises safety concerns as emergency vehicles have more limited travel room.

9

Although the Andreens may have parked from time to time in the street over the 32 years they have owned the subject property, they now seek more intense use and parking. Thus, we condition our approval with a condition prohibiting parking in the street to ensure safe traffic patterns and passage. With this condition prohibiting street parking, The Court concludes that the bed and breakfast will not have an adverse impact on traffic safety on the surrounding roads. We therefore conclude that, Ms. Andreen's bed and breakfast will not have an undue adverse effect on "traffic on streets and highways in the vicinity."

## Conclusion and Order

Ms. Andreen's proposed bed and breakfast complies with the conditional use requirements of the Town of Windhall pursuant to the Court's limited scope of review. We conclude that the bed and breakfast will not have an undue adverse effect on the character of the area and will not have an undue adverse effect on area roads.

In reaching these conclusions, we find the following conditions are necessary to conclude no undue adverse effect:

a. Parking in street is prohibited for bed and breakfast customers, guests and residents of the property.

b. Ms. Andreen shall limit delivery vehicles parking in the street to minimize traffic safety issues.

c. All yoga, including advertising for yoga, is prohibited at the subject property.

d. The bed and breakfast shall be operated so the property looks like a single-family home.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Electronically signed on March 07, 2018 at 10:10 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division